**MARYLAND CASUALTY COMPANY,**
a Corporation, Appellant,
and
**Mrs. Lucille Storm, Respondent,**

v.

**GENERAL ELECTRIC COMPANY,**
a Corporation, Defendant.

No. 52606.

Supreme Court of Missouri,
En Banc.

Sept. 11, 1967.

———◆———

Terence C. Porter, Columbia, for appellant, Welliver, Porter & Cleaveland, Columbia, of counsel.

Koenig & Dietz, F. Daley Abels, St. Louis, for respondent.

DONNELLY, Judge.

This is an action for apportionment under § 287.150 RSMo 1959, V.A.M.S. Respondent Lucille Storm prevailed in the trial court. Appellant Maryland Casualty Company appealed to the Kansas City Court of Appeals, which Court adopted an opinion affirming the judgment of the trial court. Upon appellant's application, we ordered the case transferred to this Court and it will be determined here "the same as on original appeal." Rule 84.05(h), V.A.M.R., Mo. Const., Art. V, § 10 (1945), V.A.M.S.

On February 10, 1960, David A. Storm, an electrician, was killed by reason of contact with an electrical current while working on the campus of the University of Missouri at Columbia.

The Division of Workmen's Compensation of the State of Missouri entered an award ordering Maryland Casualty Company to pay Lucille Storm, his widow, $15,500. This award has now been fully paid.

On May 11, 1960, Maryland Casualty Company, insurer for Storm's employer, filed suit against General Electric Company on the theory that a switch within a high voltage transformer substation was defectively manufactured and that a mal-

function caused the death. On August 5, 1960, Lucille Storm joined as plaintiff. Trial was had in April , 1963, and a judgment was entered for plaintiffs for $25,-000. On January 7, 1964, the judgment of $25,000 was paid into court for distribution between appellant and respondent.

The parties agree to the following facts: "That Terence C. Porter was employed by the Maryland Casualty Company, a corporation, on February 13, 1960, to make an investigation of the cause of death of the decedent David A. Storm, and to determine the existence of a cause of action for wrongful death; that pursuant to this investigation, Maryland Casualty Company directed Terence C. Porter to file a wrongful death action against the General Electric Company and that this was done as hereinbefore related on May 11, 1960; that thereafter in August, 1960, after various conferences between the widow Lucille Storm and the firm of Koenig, Dietz and Siebels of St. Louis, Missouri, who were representing her, she agreed, at the request of Terence C. Porter, as attorney for Maryland Casualty Company, to enter her appearance as a co-party plaintiff in this action; that thereafter Terence C. Porter continued the investigation and preparation of the case including the conduct of all discovery proceedings and trial preparation, including the employment of various expert witnesses and the preparation of a motion picture to illustrate the defect in the equipment of the defendant, General Electric Company, which caused the death of the decedent; that the actual trial of the case was conducted by Terence C. Porter pursuant to the original employment by Maryland Casualty Company as aforementioned; that the widow Lucille Storm cooperated in the prosecution of the case to the extent that she conferred with the said Terence C. Porter on occasion, both personally and by and through her attorneys, with respect to the progress of the preparation of the case and the prospects of settlement, and in addition, attended the trial and testified to the state of health of the decedent and the extent of her dependency; that at no time did Mrs. Storm or her attorneys assist in the investigation or preparation of the case for trial."

The amount of attorney fees and costs incident to the $25,000 recovery is not in dispute. It is agreed that the amount subject to distribution between Lucille Storm and Maryland Casualty Company is $15,-801.67.

Section 287.150, RSMo 1959, V.A.M.S., as it now exists, reads in part as follows:

"1. Where a third person is liable to the employee or to the dependents, for the injury or death, the employer shall be subrogated to the right of the employee or to the dependents against such third person, and the recovery by such employer shall not be limited to the amount payable as compensation to such employee or dependents, but such employer may recover any amount which such employee or his dependents would have been entitled to recover. Any recovery by the employer against such third person, in excess of the compensation paid by the employer, after deducting the expenses of making such recovery shall be paid forthwith to the employee or to the dependents, and shall be treated as an advance payment by the employer, on account of any future installments of compensation.

\*        \*        \*        \*        \*        \*

"3. Whenever recovery against the third person is effected by the employee or his dependents, the employer shall pay from his share of the recovery a proportionate share of the expenses of the recovery, including a reasonable attorney fee. After the expenses and attorneys fee has been paid the balance of the recovery shall be apportioned between the employer and the employee or his dependents in the same ratio that the amount due the employer bears to the total amount recovered, or the balance of the recovery may be divided between the employer and the employee or his dependents as they may agree. Any part of the recovery found to be due to the

employer, the employee or his dependents shall be paid forthwith and any part of the recovery paid to the employee or his dependents under this section shall be treated by them as an advance payment by the employer on account of any future installments of compensation."

Before 1955, the statute contained only Subsection 1. Section 287.150, RSMo 1949, V.A.M.S. The law as to apportionment thereunder was as stated in Schumacher v. Leslie, 360 Mo. 1238, 1248, 232 S.W.2d 913, 919 (1950): "Under the Missouri Act and the decisions construing it there is no double recovery, an evil to be avoided, because whoever, the employer or the employee, recovers against a third person tort-feasor holds so much of such recovery as in truth and in fact belongs to the other as an express trustee—the employee to see that the employer's right of subrogation is protected, and the employer to see that the employee receives any surplus after his indemnification. McKenzie v. Missouri Stables, Inc., 225 Mo.App. 64, 34 S.W.2d 136, 139[7]; Reynolds v. Grain Belt Mills Co., 229 Mo.App. 380, 78 S.W.2d 124, 130[2]; General Box Co. v. Missouri Utilities Co., 331 Mo. 845, 55 S.W.2d 442, 446[5]."

In 1955, the Legislature added the Subsection now numbered 3. Laws of 1955, pp. 597, 598. It is evident that if apportionment should be made under Subsection 1 of the statute, Maryland Casualty Company is entitled to $15,500. The trial court ordered apportionment under Subsection 3 of the statute and held Maryland Casualty Company is entitled to $7,690.67.

We must determine what the Legislature intended by its enactment of Subsection 3. The applicable principles of statutory construction are well settled. "Where the meaning of a statute is clear there is no occasion for its construction and the courts will apply it as written. However, when the meaning is doubtful it becomes the duty of the courts to construe it. It is elementary that the primary rule to be applied in the construction of a statute is to ascertain and give effect to the legislative intent." Foremost Dairies, Inc. v. Thomason, Mo.Sup., 384 S.W.2d 651, 659 (1964). "Repeals by implication are not favored—in order for a later statute to operate as a repeal by implication of an earlier one, there must be such manifest and total repugnance that the two cannot stand; where two acts are seemingly repugnant, they must, if possible, be so construed that the later may not operate as a repeal of the earlier one by implication; if they are not irreconcilably inconsistent, both must stand." State ex rel. Boyd v. Rutledge, 321 Mo. 1090, 1100, 13 S.W.2d 1061, 1065 (1929).

■ Did the Legislature intend that the formula specified in Subsection 3 should apply if the employee or his dependents participated in the recovery only to a limited extent? We think not. Subsection 3 provides that whenever recovery is *effected* by the employee or his dependents, the apportionment specified shall be made. The word "effected" has been held to mean "accomplished, brought to pass, completed or produced; carried to completion, or consummated." 28 C.J.S. Effect p. 838. Appellant, through its attorney, filed the action, prepared it for trial, and conducted the trial. Respondent, at appellant's request, joined as plaintiff, cooperated in the prosecution of the trial, and testified at the trial. Respondent contends that she thereby "effected" the recovery. We do not agree. Respondent would have us construe "effected" to mean "influenced." This would be contrary to the intent of the Legislature, and, as a practical matter, would abrogate by indirection the employer's right of subrogation in Subsection 1 which the Legislature intended to preserve.

■ We recognize that situations will arise wherein Subsection 3 should be applied. Also, the Legislature may see fit to more explicitly state its intention in this regard. However, the formula specified in Subsection 1 should be applied in this case. We will not allow an employee or his de-

pendents double recovery in the absence of clear intention on the part of the Legislature that we do so. The law favors a construction of a statute which avoids unjust or unreasonable results. Laclede Gas Co. v. City of St. Louis, 363 Mo. 842, 848, 253 S.W.2d 832, 835 (1953). It is significant that Subsection 1 remains a part of the statute. We will not repeal it by implication.

The judgment is reversed and the cause remanded with directions that judgment be entered for appellant in the amount of $15,500 and for respondent in the amount of $301.67.

All concur except STORCKMAN, J., who concurs in result in separate opinion filed.

## OPINION CONCURRING IN RESULT

STORCKMAN, Judge.

I agree that the facts of this case call for the application of subsection 1 of § 287.150 rather than subsection 3. It is quite evident that the *liability* of the third party was established primarily by the efforts of the employer. Counsel retained by the employer conducted the investigation to determine whether the negligence of the third person caused the death of the employee. Employer's counsel developed the theory of liability and rather ingeniously secured demonstrative evidence on the issue of liability which evidence apparently was quite effective. The contribution made by the dependent widow related primarily to the amount of the recovery. She joined as a party-plaintiff in the action at the request of the employer and testified concerning her husband's health and her loss by reason of his death. While the sum of $301.67 which remains for her from the recovery hardly seems suitable recompense for the dependent's contribution to the endeavor, the court is not free to determine the equities of the situation but is limited to the application of the methods of distribution prescribed by § 287.150.

I cannot agree, however, with the inference of the opinion that subsection 3 is likely to permit a "double recovery" and produce unjust and unreasonable results. These statements appear unnecessary to the decision in this case and may tend to discourage the application of subsection 3 in a proper situation.

"Someone may argue that the employee has no right to this excess [of the recovery against a third person in a negligence action], having had the benefit of the compensation system; but the answer is that, as between the employee and the stranger, there has been no such give and take, no such compromises struck, as between the employee and his own employer. The employer has made substantial concessions as the price of his limited liability; the employee has given up his right against his own employer to bring damage suits. But the stranger has given up nothing, and hence has a right to claim nothing resembling the immunities that exist between employer and employee. As for the employee, he gets no windfall; what he gets is nothing more than actual restoration to himself of what he has lost because of the third person's wrongful act." Larson's Workmen's Compensation Law, Vol. 2, § 71.20, p. 167. The purpose of the subrogation provisions of compensation laws is to achieve an equitable distribution of the proceeds of a recovery from a negligent third person. 101 C.J.S. Workmen's Compensation § 1042, p. 622. State statutes provide a variety of procedures and formulas as "a greater incentive" and "a financial motivation" to stimulate employers and employees alike to prosecute vigorously actions to recover damages from negligent third persons. Larson's Workmen's Compensation Law, Vol. 2, § 74.31, p. 209. What might on the surface appear to be a "double recovery" may be intended by the legislature as a quid pro quo for more effective cooperation.

The lack of uniformity in such statutes may indicate there is no best plan for achieving an equitable result in all or a ma-

jority of situations. Since the rigid formulas for distribution under Missouri statutes afford the courts little opportunity to achieve a fair result, the provision in subsection 3 of § 287.150 that "the balance of the recovery may be divided between the employer and the employee or his dependents as they may agree" is highly recommended. It is doubtlessly being widely used at the present time else more of these controversies would reach the courts. Nevertheless, I join in the suggestion of the principal opinion that a re-examination of these statutes might be fruitful. Perhaps agreements for distribution of the proceeds of common-law actions could be reviewed as to their fairness by the Workmen's Compensation Commission along the lines now provided by § 287.450 regarding compensation payable under the act.

Having the viewpoint expressed, I respectfully present this opinion concurring in result.