In the Matter of the Driver's License of El-
bert H. GREEN, Petitioner-Appellant.

No. 9455.

Missouri Court of Appeals,
Springfield District.

June 14, 1974.

Neale, Newman, Bradshaw & Freeman, O. J. Taylor, Bradford A. Brett, Springfield, for petitioner-appellant.

John C. Danforth, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Jefferson City, for Director of Revenue.

PER CURIAM.

On September 21, 1972, the then Director of Revenue issued an order revoking the operator's license of Elbert H. Green (hereinafter appellant) for a period of one year from and after October 6, 1972, because of appellant's refusal to submit to a chemical (breathalyzer) test following his arrest on March 18, 1972, for driving an automobile upon a public highway in Springfield, Missouri, while intoxicated. § 564.444, par. 1.[1] On October 3, 1972, appellant instituted this proceeding for a hearing in the Circuit Court of Greene County [§ 564.444, par. 2] and on the same date sought and obtained an order staying revocation of his license pending final determination of that judicial proceeding. At the close of a full hearing thereafter accorded to appellant, the court took the cause under advisement and in due time filed a scholarly opinion and entered a judgment finding that revocation of appellant's license was proper but continuing the stay of such revocation until determination of the cause on this appeal.

■ This matter is civil in nature [Blydenburg v. David, 413 S.W.2d 284, 290 (Mo. banc 1967)] and is governed by § 564.444. *Paragraph 1* of that statute provides in pertinent part that: "If a person 'under arrest refuses upon the request of the arresting officer to submit to a chemical test, which request shall include the reasons of the officer for requesting the person to submit to a test and which also ·shall inform the person that his license may be revoked upon his refusal to take the test, then none shall be given. In this event, the arresting officer, if he so believes, shall make a sworn report to the director of revenue that he has reasonable grounds to believe that the arrested person was driving a motor vehicle upon the public highways of this state while in an intoxicated condition and that, on his request, [such person] refused to submit to the test. Upon receipt of the officer's report the director shall revoke the license of the person refusing to take the test for a period of not more than one year . . . ." *Paragraph 2* permits a judicial hearing on the revocation, prescribes that the prosecuting attorney "shall appear at the hearing on behalf of the arresting officer," and that at such hearing "the judge shall determine only: (1) Whether or not the person was arrested; (2) Whether or not the arresting officer had reasonable grounds to believe that the person was driving a motor vehicle while in an intoxicated condition; and, (3) Whether or not the person refused to submit to the test." If any one of those three issues is determined in the negative, the court "shall order the director to reinstate the license or permit to drive."

■ Before proceeding to the facts, we observe preliminarily that the scope of our appellate review in this proceeding is the same as in other court-tried civil cases [Bolling v. Schaffner, 488 S.W.2d 212, 213(1) (Mo.App.1972)] and thus is delineated in and governed by Rule 73.01(d), which provides, inter alia, that "[t]he appellate court shall review the case upon both the law and the evidence as in suits of an equitable nature" and that "[t]he

---

1. All statutory references are to RSMo 1969, V.A.M.S., and all references to rules are to the Supreme Court Rules of Civil Procedure, V.A.M.R.

judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

About 4:40 P.M. on Saturday, March 18, 1972, Sergeant Ralph Jackson, a 19-year veteran of the Springfield Police Department then on duty in a marked patrol car, was waiting on East Division Street for the traffic light at the intersection of that street and North Glenstone Avenue to change, when the driver of an automobile on Glenstone turned onto Division, stopped by the side of the patrol car, and spoke briefly with Jackson. As a result of that driver's comments, Jackson proceeded south on Glenstone, which has a four-lane roadway with two marked lanes for traffic moving in each direction, and observed appellant's southbound Cadillac and behind it "a string" of four automobiles, whose drivers "were hesitant about passing, as the driver of the Cadillac was driving erratical [sic]"—"I mean he was going over in the other southbound lane of traffic . . . and back, just kind of weaving." After the four automobiles had an opportunity to pass around the Cadillac when there was "a break" in northbound traffic, Jackson turned "the red light on, I thought maybe he would pull over [but] he didn't." Jackson then "pulled up alongside of the car and motioned for him to pull over, and at that time he did so, partially blocking the inside lane" for southbound traffic, until pursuant to Jackson's request appellant turned the Cadillac onto an adjacent parking lot on the west side of Glenstone.

■ Before Jackson interrogated appellant, the driver of another southbound automobile that had just pulled into the same parking lot also complained about the driver of the Cadillac, identified him by name, and expressed the "opinion he was drunk." Proceeding to interrogation of appellant, Jackson told him of "the two complaints" by other motorists. As Jackson described it, appellant was "real slow about answer-ing" questions and likewise "real slow about looking through his billfold" for his operator's license before opining that he "must have left" it at home where, in fact, it subsequently was found. There was an odor of alcohol about appellant's person and, when he got out of his automobile, he was unsteady on his feet. Being of the opinion that appellant was intoxicated, Jackson placed him under arrest for intoxicated driving, informed him that he would have to go to the police station, called another patrol car in which appellant was taken to the station, and arranged for the Cadillac to be towed in. From the foregoing, we think it clear that the trial court properly found, in ruling the first and second issues determinable on judicial review of revocation of an operator's license, (1) that appellant was arrested and (2) that Jackson, the arresting officer, had reasonable grounds to believe that appellant was driving a motor vehicle while in an intoxicated condition. § 564.444, par. 2.

■ The third statutory issue determinable by the trial court was whether or not appellant refused to submit to the test. At the hearing, appellant admitted that he definitely refused to take the test. However, his capable and resourceful counsel vigorously assert that the request of the arresting officer that appellant submit to the test was inadequate because appellant was not advised (a) "that revocation of his operator's license was mandatory if he refused the chemical test" and (b) "of the reasons for the request that he submit to a chemical analysis."

*Of (a).* The undisputed testimony of Sergeant Jackson, the arresting officer, was that at the police station he explained to appellant "the operation procedures . . . how the breathalyzer operates" and then "the consequences, what would happen to him if he refused to take the breathalyzer" test, in this connection reading to appellant a prepared statement kept at police headquarters for such use which stated and set forth such consequences in

substantially the language of the statute, i. e., "that his license may be revoked upon his refusal to take the test." § 564.444, par. 1. Additionally Officer King, a qualified and licensed breathalyzer operator, testified that he also informed appellant "that the law required him to take the test when he was suspected of being intoxicated while he was driving, and the consequences if he refuses."

Although the arresting officer's statement was in the language of the statute, appellant's counsel boldly assert that such warning "that his license *may* be revoked upon his refusal to take the test" actually was "erroneous" and "misleading" because this "carried with it the connotation" that revocation might or might not result, whereas (so they say) the remainder of the same statutory paragraph [§ 564.444, par. 1] makes revocation absolutely mandatory. (All emphasis herein is ours.) However, upon careful examination of the remainder of that paragraph, we find in the *third* sentence thereof (as hereinbefore quoted) that "the director [of revenue] *shall* revoke the license of the person refusing to take the test" only "[u]pon receipt of the [arresting] officer's report." And, returning to the *second* sentence of the same paragraph, we find that such officer "shall make a sworn report to the director of revenue" only *"if he so believes* . . . [1] that he has reasonable grounds to believe that the arrested person was driving a motor vehicle upon the public highways of this state while in an intoxicated condition and [2] that, on his [the officer's] request, [such person] refused to submit to the test." By disposing of requirement [1] in the "sworn report" with the cavalier parenthetical comment that "an arresting officer could hardly contend otherwise in a case in which the arrest has already been made," appellant's counsel thereby treat of the second sentence as imposing upon the arresting officer an obligation, "mandatory beyond question," to make "a sworn report" if the arrested person refused to submit to the test.

We are unable to concur in counsel's casual and confident disposition of requirement [1] on the assumption that "an arresting officer could hardly contend otherwise . . . ." On the contrary, we can envision a state of facts (a) in which an officer might, *at the time of arrest,* have reasonable grounds to believe that the arrested person was driving a motor vehicle on the highway while in an intoxicated condition and (b) in which the same officer might, as the result of subsequent developments and disclosures at police headquarters, *then* be unable or unwilling in good conscience to make the "sworn report" of his *then* belief in requirement [1].

With respect to the specific situation before us, we observe that, at the hearing in circuit court, appellant proffered explanations designed to show that the various objective aspects of his driving and conduct immediately prior to his arrest by Sergeant Jackson were not due to a culpable state of intoxication. More specifically, appellant said that on the day of his arrest he had been at his home northeast of Springfield, that he had "been ill and under medication" some of which had "a depressive effect" on him, and that, "in an effort to build [himself] up" for a business appointment to which he was proceeding at the time of his arrest, he had two "normal size drinks" of about one ounce each, which accounted for the odor of alcohol detected by Jackson but (so he vigorously insisted) certainly did not put him in an intoxicated condition. As he traveled along Glenstone, traffic was "fairly congested" and he "did change lanes from time to time"—"I don't regard myself as the world's most skilled driver"; but he was not "weaving back and forth" and was "trying to drive cautiously." With respect to the charge that he was unsteady on his feet, appellant said that he had "a bad [right] leg" and "could easily fall" if he stepped ·from an automobile and "put too much stress" on that leg—"at times I walk with a cane." Finally, he explained that his "normal manner of speech," as at the

hearing, was "slow and deliberate." No doubt these explanations were, at least in part, responsible for the finding of not guilty (whether by the judge or by a jury we are not informed) upon trial of defendant in municipal court on the charge of driving while intoxicated arising out of the state of facts under discussion.

However, none of these explanations were tendered to Sergeant Jackson or other officers on the day of appellant's arrest. Rather, appellant "stonewalled" it at police headquarters following his arrest, relying solely on the prior advice of an attorney, as revealed and established by the following testimony of appellant at the hearing in circuit court. Immediately after admitting that he had been advised at police headquarters of the consequences of his refusal to take the breathalyzer test, appellant added the voluntary explanation that, "now, I was advised in his lifetime by B——— [naming a prominent Springfield attorney] . . . who would never advise a client of his to take a polygraph test or a breathalyzer test." When asked pointedly "did you in fact tell the police officers that you would not take the breathalyzer test," the explicit response was "yes, I did"; and, to the next succeeding inquiry whether "this was on the basis of you[r] belief, long-standing belief that you had with Mr. B——— about that," the unequivocal reply was "yes, sir; now, it may seem unfair to quote him, since he has left us, but that's what happened."

In State v. Hanson, 493 S.W.2d 8, 12 (Mo.App.1973), the arresting trooper testified that he had advised defendant that anyone "arrested for driving while intoxicated must submit to a breathalyzer test . . . and that if he refused to take the test his license *might* be revoked," and the appellate court held that "[w]e find the warning given by the trooper was substantially in accord with § 564.444." And in Bolling v. Schaffner, supra, 488 S.W.2d at 215, where the issue was "whether a proper request was made for a chemical test and refused by plaintiff," the court said that "[n]o particular words need to be

used [in making the request] so long as the officer accompanies the request with the further requirements of the statute as to the reasons for the request and the *possibility* of license revocation, if the request is refused."

With the governing statute [§ 564.444] declaring that, in requesting the person under arrest to submit to a chemical test, the arresting officer "*shall* inform the person that his license *may* be revoked upon his refusal to take the test," we are not inclined to condemn or to declare insufficient a warning, such as that given by Sergeant Jackson, in substantially the language of the statute. A fortiori, there could be no basis for any such complaint in this case, where it was established indisputably that, as the trial court specifically found, appellant refused to take the test because of his respect for, and reliance upon, the prior opinion and advice of a prominent attorney.

■ *Of (b).* In presenting the other point raised in appellant's brief, i. e., that he was not adequately advised "of the reasons for the request that he submit to a chemical analysis," counsel insist that, in requesting appellant to submit to a breathalyzer test, Sergeant Jackson was required to detail to him all of the "factors" or circumstances which in toto gave rise to Jackson's conclusion that appellant was driving while intoxicated. The argument of appellant's counsel runs along the line that, if all of those circumstances had been so detailed to appellant, he would have been afforded the opportunity to offer reasonable explanations which might have affected Jackson's judgment in making the request; that "appellant had reasonable and convincing explanations to offer with respect to the very matters that influenced the officers," which said explanations, when subsequently related in municipal court, were "adequate and sufficient" to result in acquittal there on the DWI complaint; and that, if all of the "factors" or circumstances on which the officers relied and "about which they could be expected to testify at a trial" had been detailed to

appellant in connection with the request to submit to the breathalyzer test, "either his timely explanations to the officers would have been accepted by them and their 're-quest' withdrawn, or, realizing the full impact of the officer's [sic] proposed evidence, appellant would have reconsidered and submitted to the test." Counsel complete this verbal web of surmise with the beguiling thought that "in either case, the matter would not be before this court."

Ingenious and intriguing as the presentation of this point by appellant's counsel is, we find no support for it either in the record or in the cases. On the parking lot, Jackson told appellant of "the two complaints" by other motorists, advised him that he had been stopped "due to his driving," after helping him to the patrol car "asked him if he was sick or had been sick," placed him under arrest for intoxicated driving, "informed him about the breathalyzer test [and] that he was going to have to go in to the station," and arranged for him to be taken to the station in a patrol car because "the paddy wagon is a little higher up to step into than an automobile and he was having some difficulty there." At police headquarters both Jackson and Officer King, the licensed breathalyzer operator, explained "the operation procedures" and "how the breathalyzer operates," which necessarily would have informed appellant (even if it were assumed unrealistically that he did not already know) that the purpose of the test and the reason for conducting it were to determine the amount of alcohol in his blood. We have no doubt but that appellant was actually and adequately informed by arresting officer Jackson of the "reasons" for the request that he take the breathalyzer test within the meaning and intent of § 564.444, par. 1. In this connection, see Bolling v. Schaffner, supra, 488 S.W.2d at 216, where the officer's unadorned statements to the arrested person, "to determine the alcoholic content" and "to show the amount of alcohol in his system," were held to have "made clear" to him "the reason" for the request to take the test.

Appellant's theory would, in substance and effect, have required that arresting Officer Jackson, in requesting at police headquarters that appellant submit to a chemical test, detail and recount all of the "factors" or circumstances (most of which theretofore had been called to appellant's attention when Jackson *first* asked appellant at the time of arrest to take the breathalyzer test) which in toto gave rise to the officer's opinion that appellant was driving while intoxicated. Approval and adoption of that theory advanced by appellant's counsel would run afoul of fundamental rules of statutory construction frequently employed in ascertaining legislative intent, i. e., that we must never lose sight of the object sought to be accomplished and the manifest purpose sought to be served [Edwards v. St. Louis County, 429 S.W.2d 718, 722(5) (Mo. banc 1968); State ex rel. Gerber v. Mayfield, 365 Mo. 255, 259, 281 S.W.2d 295, 297(3) (banc 1955); Stewart v. Johnson, 398 S.W.2d 850, 853(3) (Mo.1966)], and that the law favors a construction tending to harmonize with reason, give meaning to the enactment, and avoid an unjust or absurd result. Maryland Casualty Co. v. General Electric Co., 418 S.W.2d 115, 118(3) (Mo. banc 1967); Suburbia Gardens Nursery, Inc. v. County of St. Louis, 377 S.W.2d 266, 271(3) (Mo. banc 1964); Laclede Gas Co. v. City of St. Louis, 363 Mo. 842, 848, 253 S.W.2d 832, 835(3) (banc 1953); Owen v. Riffie, 323 S.W.2d 765, 770(2) (Mo.1959); Garrard v. State Dept. of Public Health & Welfare, 375 S.W.2d 582, 590(19) (Mo. App.1964).

■ However, if all of the foregoing discussion of this point were laid aside, appellant still would not be entitled to prevail because, as elaborated in our consideration of the first point, his own testimony plainly established that he refused to take the test because of his respect for, and reliance upon, the prior opinion and advice of a prominent attorney, and not because of any insufficiency of or imperfection in either the arresting officer's statement of the reasons for requesting the test or the

officer's warning as to the consequences of appellant's refusal to submit thereto.

As noted at the outset, revocation of appellant's license was stayed by order of the circuit court until determination of the cause on this appeal. Hence, upon dissolution of that stay by this court, the Director of Revenue will be free to proceed with such revocation by the issuance of an order revoking appellant's privilege of operating a motor vehicle in the State of Missouri for a period of one year from and after the effective date stated in the order. Cf. Bolling v. Schaffner, supra, 488 S.W. 2d at 216(6).

The judgment of this court is (a) that the findings and judgment of the Circuit Court of Greene County, Missouri, upon the issues submitted at the hearing in said court should be and hereby are approved and affirmed, (b) that the Circuit Court's stay of the Director of Revenue's revocation of appellant Elbert H. Green's privilege of operating a motor vehicle in the State of Missouri should be and hereby is dissolved, and (c) that said Director of Revenue should be and hereby is authorized to proceed forthwith by the issuance of an appropriate order of revocation.

All of the Judges concur.

