Alice Blackburn HAYS, Appellant,

v.

Gerald GOLDBERG, Director Department of Revenue State of Missouri, Respondent.

No. 30555.

Missouri Court of Appeals, Western District.

Sept. 4, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 1, 1979.

Application to Transfer Denied Nov. 14, 1979.

Andrew J. Gelbach, Warrensburg, for appellant.

Thomas R. Williams, Pros. Atty., Warrensburg, for respondent.

Before SOMERVILLE, P. J., and PRITCHARD and MANFORD, JJ.

MANFORD, Judge.

Appeal from trial court order denying and overruling appellant's petition for review of an order revoking appellant's privilege to operate a motor vehicle for refusal to take a chemical breathalyzer test.

Review of this case is made under Rule 73.01(d) and *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976).

On July 21, 1978, appellant was operating her motor vehicle on Highway 13 in Caldwell County. After receiving reports of erratic driving by appellant, a highway trooper stopped appellant's motor vehicle, observed appellant and smelled the odor of intoxicating beverages upon her breath. Upon questioning, appellant stated she had been drinking for about an hour to an hour and one-half before being arrested.

On or about August 12, 1978, appellant received, from respondent, a notice of revocation of the privilege to operate a motor vehicle in Missouri. Appellant then filed her petition for review of the revocation order and on October 30, 1978, a trial was held on said petition. The trial court denied appellant's requested relief and this appeal followed.

Two points are raised on appeal. The first point alleges that the trial court erred in the court having found that appellant unequivocally refused to submit to a chemical (breathalyzer) test. The second point alleges that the law enforcement officer did not adequately advise appellant of the purpose of the test and the consequences of refusal.

It is obvious that no preset formula of verbal exchange can be patterned by the courts which could determine in every case whether there was a bona fide request and a bona fide explanation by the law enforcement officer of the consequences of refusal, followed by a clear cut agreement to take the test or a clear cut refusal to take the test. Each case and the facts pertaining thereto must be carefully considered.

As to the first point raised by appellant, the evidence herein does not support her contention. The record shows the following:

"Q. Tell us what, if anything, occurred after he stopped you?

A. Oh, uh, he, uh, asked me if I would take the breathalyzer test and at that time I said no."

The record reflects appellant was placed under arrest and taken to the office of the Sheriff of Caldwell County. At this point, appellant contends the trooper again asked if she would take the test and contends her response amounted to an affirmative reply. The record does not support her contention, for it is found:

"A. [by appellant] "We waited for the Sheriff, and then we went back to Kingston. And when we went into the police station [Sheriff's office] the officer asked me again if I would take the breathalyzer test, and I said yes, I would because—he would probably make me anyway, and he said no, I didn't have to.""

Upon this same point, appellant's 13 year-old son testified:

"A. Uh, he asked her if she wanted to take it and she said, 'Yes, you would probably make me anyway.' Then, he said, 'No, you don't have to take it,' then she didn't take it."

The testimony of the trooper on this point was direct as to having offered the opportunity of the test twice to appellant and her double refusal. When questioned about appellant's statement ". . . he would probably make me anyway and he said no, I didn't have to", the trooper testified he had no recollection of such a statement.

From the statement of appellant, which is the only evidence on this first point, it is not certain whether the alleged "no, I didn't have to" passage refers to the officer advising appellant that the test is not mandatory or whether, as appellant would suggest, the trooper, by his statement, had abandoned all effort to secure a breathalyzer test. To follow appellant's reasoning leads one down a paradoxical path, for on the one hand, appellant contends the trooper made a second request, and in the same verbal ex-change, abandons any effort to secure a test. This contradictory evidence speaks for itself and when matched with the initial request and initial refusal, leads to the inescapable conclusion that appellant did, in fact, refuse to take the test. The refusal to take such a test need not be wholly unequivocal. *Duncan v. Safety Responsibility Unit, Department of Revenue,* 550 S.W.2d 619, 622 (Mo.App.1977).

The evidence herein supports a finding of a refusal to submit to a chemical breathalyzer test within § 564.444, RSMo 1969 [1] and *Duncan v. Safety Responsibility Unit, Department of Revenue, supra,* and satisfies the rule prescribed by *Murphy v. Carron, supra.*

The second point of error alleged by appellant again finds the court without any predesigned formula as to determine the sufficiency of whether the law enforcement officer informed appellant of the results of refusal so as to satisfy the requirements of § 564.444, RSMo 1969, and the evidence of the record must provide this answer. The pertinent portion of § 564.444, RSMo 1969 reads as follows:

"If a person under arrest refuses upon the request of the arresting officer to submit to a chemical test, which request shall include the reasons of the officer for requesting the person to submit to a test and which also shall inform the person that his license may be revoked upon his refusal to take the test, then none shall be given."

In summary, appellant's evidence included a flat denial that the trooper ever informed her that her license might be revoked upon refusal. Appellant testified she first learned of such possible results upon reading a driver's manual subsequent to her arrest. Appellant stated, upon direct testimony, that the trooper never explained why he wanted appellant to take the test; but upon cross-examination, appellant answered, "Uh, he didn't state, but I assumed that it was to test how much alcohol content, it is the only reason I could think of for taking one."

1. § 564.444, RSMo 1969 has been reenacted as § 577.050, RSMo 1978.

The testimony of the trooper, on the other hand, directly referred to the possibility of license revocation upon appellant's refusal to take the test. The trooper testified, upon direct examination and cross-examination, that he advised appellant of the possible and probable loss of her driving privileges upon her refusal to take the test.

The evidence upon this point, while conflicting, does nothing to further indicate that the ruling by the trial court would cause this case to be overturned under the scope of review mandated by *Murphy v. Carron, supra.* The trial judge could and did observe the demeanor of the witnesses and the evidence is substantial to support the finding of the trial court.

The evidence is clear in this case that appellant knew why the trooper requested the chemical test. It was because the trooper concluded that appellant was intoxicated. Appellant testified she concluded the test request was made to test the alcohol content of her blood.

Appellant was, by her own testimony, not oblivious to the circumstances surrounding the incident of her arrest and the later detention at the Sheriff's office. That the arresting officer is required to inform the citizen that his license may be revoked is required by § 564.444, RSMo 1969. See also *Bolling v. Schaffner,* 488 S.W.2d 212 (Mo. App.1972) and *In re Green,* 511 S.W.2d 129 (Mo.App.1974).

The evidence herein is sufficient to support the trial court's finding that appellant was advised of the results or consequences of her refusal in that her license or privilege to operate a motor vehicle in Missouri might be revoked as to satisfy § 564.444, RSMo 1969, *Bolling v. Schaffner, supra* and *Murphy v. Carron, supra.*

Point two is ruled against appellant.

For the reasons set forth herein, the judgment of the trial court is, in all respects, affirmed.

All concur.