Lester R. COLLINS, Appellant,

v.

DIRECTOR OF REVENUE, State of Missouri, Respondent.

Naomi L. JOHNSON, Appellant,

v.

DIRECTOR OF REVENUE and State of Missouri, Respondents.

Nos. 66788, 66790.

Supreme Court of Missouri,
En Banc.

May 29, 1985.
Rehearing Denied June 25, 1985.

Leonard Breon, Andrew J. Gelbach, Warrensburg, for appellants.

Richard L. Wieler, Asst. Atty. Gen., Jefferson City, David A. Dolph, Dept. of Revenue, Kansas City, Sharon M. Busch, Ninion S. Riley, Missouri Dept. of Revenue, Jefferson City, for respondents.

Robert G. Duncan, Kansas City, Robert C. Welch, Independence, for amicus curiae.

GUNN, Judge.

This is a consolidated appeal of two individuals, each arrested for driving while intoxicated and served with notice of license suspension, pursuant to § 302.520, RSMo Cum.Supp.1983. Both suspensions were upheld in subsequent administrative hearings and trials de novo in circuit court. We accepted transfer from the Western District Court of Appeals and have consolidated the two cases to facilitate the resolution of the issues which raise constitutional challenges to the license suspension procedures set forth in §§ 302.500–.540, RSMo Cum.Supp.1983.[1]

We affirm the suspensions.

Both appellants assert that the statutory scheme for the summary suspension of driving privileges is violative of the equal protection clauses of the constitutions of the United States and Missouri,[2] in that the procedure applies only to persons arrested for state offenses and only to those intoxicated persons found to have a blood alcohol content (BAC) of thirteen-hundredths of one percent or greater (.13 percent).

Appellants also present several evidentiary matters. They contend that the state failed to prove that the arresting officers had probable cause to believe that appellants possessed a BAC of at least .13 percent at the time of the arrest, as allegedly required by § 302.505. And they assert that there was no sufficient foundation for the breathalyzer examination test results. They also argue that the state failed to present any evidence that the appellants were adequately informed of their rights to refuse the breathalyzer examination and of the attendant consequences of their refusal or submission.

Individually, appellant Collins submits that he was denied his right of discovery when the trial court refused to grant a continuance. Appellant Johnson claims that she was denied her right of cross-examination at her administrative hearing when the hearing officer merely took judicial notice of the agency case file and heard no testimony. She also contends that the evidence contained in the agency case file consisted of closed records which were inadmissible.

I.

Appellants first challenge the constitutionality of §§ 302.500–.540 on an equal protection basis. They assert that the summary suspension procedure outlined in these statutes arbitrarily singles out persons arrested for violating state drunk driving laws because violators of comparable county and municipal ordinances are

1. Unless otherwise indicated, all references to statutes in this opinion are to Missouri Revised Statutes, Cumulative Supplement 1983. The act is now contained in RSMo Cum.Supp.1984.

2. U.S. Const. amend. XIV, § 1; Mo. Const. art. I, § 2.

not subject to automatic suspension of their licenses. They also contend that the separate classification for persons with a BAC of .13 percent or greater is arbitrary and capricious in view of the legislative presumption that persons with a BAC of at least .10 percent are intoxicated.[3]

When a law or a series of statutes is assailed as unconstitutional, the initial inquiry is the proper standard of review. Appellants do not urge that the challenged statutes infringe upon fundamental rights or create a suspect classification. Accordingly, to determine whether the statutory classification set forth in §§ 302.500–.540 violates the strictures of the equal protection clauses, we need only examine whether the statutes bear any rational relationship to a legitimate state interest. *State Board of Registration for the Healing Arts v. Giffen*, 651 S.W.2d 475, 480 (Mo. banc 1983). Moreover, appellants carry the burden of demonstrating that the law does not rest upon any reasonable basis but is essentially arbitrary. *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78–79, 31 S.Ct. 337, 340–341 55 L.Ed. 396 (1911); *State v. Mitchell*, 563 S.W.2d 18, 23 (Mo. banc 1978). And if any state of facts reasonably can be conceived which would sustain the laws in question, that state of facts is assumed. *Id.*

Appellants do not deny that the challenged statutes have a legitimate state interest, in that the laws are designed to prevent the slaughter on our highways which might occur if intoxicated persons were permitted to drive. They urge, however, that because not all intoxicated drivers are subject to expedited review and administrative suspension of their licenses, the statutory classification is not rationally related to this state objective. We note that there is no constitutional mandate that every law reach every classification to which it might apply. "[A] legislature need not 'strike at all evils at the same

time' ... and 'reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind.'" *Katzenbach v. Morgan*, 384 U.S. 641, 656–57, 86 S.Ct. 1717, 1726–27, 16 L.Ed.2d 828 (1966) (*quoting Williamson v. Lee Optical Co.*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955)).

Potential harm exists whether the intoxicated driver possesses a BAC of .10 percent or .13 percent, even though BAC affects different people in different ways. It is also clear that the proportion of people whose driving ability is impaired and the extent of that impairment rises with increasing blood-alcohol levels. Gray, *Attorney's Textbook of Medicine*, 3d ed., ¶ 133.-52(4) (1969). Thus, there exists some "reasonable basis" for the legislative classification; and though the classification may be arguably imperfect, it does not constitute an impermissible denial of equal protection. *Crane v. Riehn*, 568 S.W.2d 525, 530 (Mo. banc 1978).

Likewise, appellants have failed to demonstrate that the challenged statutes are unconstitutional because they differentiate between state law offenders and violators of local ordinances. We do not sit as a "super legislature" to rule on the wisdom of this and other legislative determinations which result in disparate treatment but do not affect fundamental rights. *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976); *American Motorcyclist Association v. City of St. Louis*, 622 S.W.2d 267, 270 (Mo.App.1981). It is sufficient that the legislative distinction is not clearly arbitrary and unreasonable. *State v. Ewing*, 518 S.W.2d 643, 646 (Mo.1975). It is not unreasonable in this instance.

## II.

The first of the appellants' evidentiary contentions of error requires the Court to

---

**3.** Appellants assert that there exists a "legislative presumption" that persons with a BAC of at least .10 percent are intoxicated, because operation of a motor vehicle while one possesses

blood-alcohol concentration of this amount is a misdemeanor in violation of § 577.012, RSMo Cum.Supp.1984.

construe § 302.505.1. That provision reads as follows:

The department shall suspend the license of any person upon its determination that the person was arrested upon probable cause to believe he was driving a motor vehicle while the alcohol concentration in the person's blood or breath was thirteen-hundredths of one percent or more by weight of alcohol in his blood, based on the definition of alcohol concentration in section 302.500.

The appellants adopt a literal interpretation and contend that this statute requires the state to prove by a preponderance of the evidence that the arresting officer, at the exact moment of the arrest, had probable cause to believe the suspect was driving a motor vehicle while the alcohol concentration in his or her breath was at least .13 percent. Each appellant states that there was no evidence in their trials de novo which indicated that the arresting officers possessed the requisite probable cause. Therefore, they contend that the suspension of the driving privileges must be reversed on the basis of insufficient evidence.

■■■■ The cardinal rule of statutory construction requires the court to ascertain the true intention of the legislature, giving reasonable interpretation in light of legislative objective. *BCI Corporation v. Charlebois Construction Co.*, 673 S.W.2d 774, 780 (Mo. banc 1984). In determining the legislature's intention, the provisions of the entire legislative act must be construed together, and if reasonably possible, all the provisions must be harmonized. *Bartley v. Special School District of St. Louis County*, 649 S.W.2d 864, 867 (Mo. banc 1983).

In applying these precepts, we first examine § 302.510.1. That statute prescribes that the arresting officer is to submit a verified report to the Department of Revenue if the offending driver has a BAC of at least .13 percent. In the verified report, the arresting officer is to forward a copy of the breathalyzer test results and state his or her "grounds for belief that the person violated section 577.010, [driving while in-

toxicated] or 577.012 [driving with excessive blood alcohol content]...."

This provision is significant in determining the meaning of § 302.505, because it indicates the legislature's intent that the only probable cause required of the arresting officer is that which is necessary to effect the initial arrest under § 577.010 or § 577.012, RSMo Cum.Supp.1984. The Department's determination on the suspension of driving privileges is to be based upon the officer's report. Section 302.505.2. And had the legislature intended for the state to prove that the officer formed some specific type of probable cause, other than that necessary to effect the arrest, we would expect § 302.510.1 to require the officer to document his belief and submit a statement to that effect to the Department of Revenue in the verified report.

Additionally, we note that a literal reading of the statute, as urged by the appellants, would permit the Department of Revenue to suspend a driver's license merely on the basis of the officer's probable cause to believe that the suspect had been driving with a BAC of .13 percent or greater. Whether the arrestee actually had any alcohol in his blood would be irrelevant. This interpretation could create unreasonable results and inequities. The law favors a construction which avoids such results, *State ex rel. McNary v. Hais*, 670 S.W.2d 494, 495 (Mo. banc 1984); *Maryland Casualty Co. v. General Electric Co.*, 418 S.W.2d 115, 118 (Mo. banc 1967). Therefore, we reject the appellants' position. Moreover, it is obvious that the legislature intended for the Department to consider the results of any chemical analysis; otherwise the arresting officer would not be required to submit the results of such test with his verified report. Section 302.510.1.

■■■■ Appellants' interpretation of the statute also conflicts with § 302.530.4, which states that the "sole issue" in the administrative review hearing shall be "whether by a preponderance of the evidence the person was driving a vehicle under the circumstances set out in § 302.505. If the department finds the affirmative of

this issue, the suspension order shall be sustained." The circumstances defined in § 302.505.1 are driving "while the alcohol concentration in the person's blood or breath was thirteen-hundredths of one percent or more...." The decisive issue, then, is not whether the arresting officer possessed some particular type of probable cause, but whether the person had the excessive amount of blood alcohol concentration while he or she was driving.

As our analysis demonstrates, the challenged statute cannot be harmonized with the rest of the act if interpreted literally. And, we cannot permit the statute to be interpreted in a manner which would wreak havoc with the rest of the act. It appears to us that the statute was designed to expeditiously remove the most dangerous drunk drivers from Missouri roadways. In order to effectuate this intent, the strict letter of the law must yield. *BCI Corporation v. Charlebois Construction Co., supra.*

■ We interpret § 302.505.1 as requiring that a suspect first be arrested upon probable cause to believe that he or she is driving in violation of § 577.010 or 577.012. Once arrested, if the suspect submits to a chemical analysis and the results of such test indicate that the arrestee possesses a blood alcohol concentration of at least .13 percent, he or she is subject to suspension of driving privileges. The Department of Revenue is then required to determine, upon a preponderance of the evidence, based on the officer's verified report and the breathalyzer test results, whether the defendant had been driving while his or her blood alcohol concentration was at least .13 percent. Having adopted this two-step analysis, we find sufficient evidence in the records of each case to sustain the determinations made by the Department of Revenue and the findings of the circuit courts in upholding the suspension of the appellants' licenses.

Appellants also complain that they were not informed of their right to refuse to take the breathalyzer examination, nor were they advised of the consequences for submitting or refusing to submit to the test. Therefore, they argue that the test results were inadmissible.

■ Section 577.041.1, RSMo Cum. Supp.1984, states in pertinent part:

If a person under arrest refuses upon the request of the arresting officer to submit to a chemical test, which request shall include the reasons of the officer for requesting the person to submit to a test and which also shall inform the person that his license may be revoked upon his refusal to take the test, then none shall be given....

Nothing in this provision requires the arresting officer to inform the defendant of the multiplicity of consequences which might occur if the driver submits to the examination. The statute requires only that the officer inform the arrestee of the consequences for *refusing* to submit to the examination as well as why the test is being administered.

In appellant Johnson's case, the record clearly indicates that a proper request was made, including the statutory warning as to the consequences for refusing to take the examination. She is entitled to nothing more.

■ In appellant Collins' case, there is a complete absence of testimony on the subject. Nothing in the record reflects whether the warning was administered or omitted. Appellant did not bring the issue to the attention of the trial court in the form of an objection to the admission of the breathalyzer results or otherwise. The appellate courts will not convict the trial court of error on an issue which was not presented to it for a decision. *Lincoln Credit Co. v. Peach,* 636 S.W.2d 31, 36 (Mo. banc 1982), *appeal dismissed,* 459 U.S. 1094, 103 S.Ct. 711, 74 L.Ed.2d 942 (1983).

Next, appellants collectively complain that there was no sufficient foundation for the introduction of breathalyzer test results, because in neither case did the state establish that the machines functioned properly or that accurate test results were achieved.

It is settled that if breathalyzer tests are administered by certified operators in accordance with the operating procedures promulgated by the Missouri Division of Health, a prima facie case for the introduction of test results is made. *State v. Bush,* 595 S.W.2d 386, 389 (Mo.App. 1980). In each of these cases, the testing officer stated that he held a "Type III" operating permit which authorized him to conduct the breathalyzer examination. Each trooper was questioned and testified that he followed the authorized "checklist" of the Missouri Division of Health which sets forth the proper mode of operating the breathalyzer machine. In these cases, the court took judicial notice of the State rules and regulations in which the checklist appears. This is all that was required. Introduction of the checklist, or the judicial notice of the list, and testimony that the procedures there defined were followed is sufficient foundation to permit admission of the test results. *State v. Shephard,* 639 S.W.2d 258, 260 (Mo.App.1982); *State v. Bush,* 595 S.W.2d at 388.

The appellants' assertion that the state must affirmatively prove that the machine worked properly on the date in question is erroneous. "A contention that the breathalyzer machine was not in proper operating condition can only be validly made if supported by some evidence which at least suggests that a malfunction occurred despite adherence by the testing officer to the correct test methods." *State v. Bush,* 595 S.W.2d at 389. We find no suggestion in the record that the machines malfunctioned.

We also find no merit in appellant Collins' contention that the state failed to present any evidence that the testing officer observed the appellant for a requisite period of time prior to administering the breathalyzer test. The first of nine steps on the "checklist" requires the officer to observe the subject for at least 15 minutes prior to administering the test. Mo. Division of Health Operating Procedures for Breath Analysis, 13 CSR 50–140.060 (1983). When asked to detail the steps he followed, the trooper failed to state how long he had observed the appellant.

Appellant Collins made no attempt to cross-examine the trooper on this point, nor did he object to the state's evidence at trial. Hence, this point also is not preserved and we refuse to find error. *Lincoln Credit Co. v. Peach, supra.* Even if the appellant had preserved the issue for appeal, the trooper testified that he followed each of the items on the checklist and certified that there was no deviation from the approved procedures. It was for the trial court to determine on the basis of this testimony whether there was any deviation or discrepancy. *State v. Jackson,* 643 S.W.2d 74, 77–78 (Mo.App.1982). There is sufficient evidence to support the trial court's implicit finding that the breathalyzer tests were administered properly.

### III.

Finally, we address those points raised by each appellant individually.

Appellant Collins asserts that the trial court committed reversible error in refusing to grant a motion for a continuance because the court's ruling effectively denied the appellant of his right of discovery. He argues that his attorney had been misled by the state into believing that the trial had been scheduled for April 25, 1984, when actually the trial had been docketed for March 22, 1984. Due to the misunderstanding, appellant's attorney delayed in submitting his discovery request until March 19, 1984. The state was entitled to twenty days in which to respond to the discovery request for the production of documents. Rule 58.01(b). Had the trial been scheduled for April 25th, the state would have had to produce the documents. The state was not obligated to respond, however, by the true trial date which was in March.

The record in this cause refutes much of what the appellant contends. There is no evidence that appellant's attorney was misled by the state. The legal file indicates that the state's attorney had requested a

continuance to April 25, 1984 and that the appellant had joined in this request. The trial court granted the continuance, but only to March 22, 1984. A copy of the trial court's order to this effect was sent to the parties on February 8, 1984, giving each side sufficient time in which to forward discovery requests. The transcript reveals, however, that the appellant's attorney merely presumed that the trial had been set for sometime in April. Upon discovering that the trial had been docketed for March 22nd, appellant's attorney submitted another motion for a continuance, which was denied.

The trial court is responsible for controlling the docket and progress of litigation and the granting of a continuance is largely within its discretion. *Commerce Bank of Mexico, N.A. v. Davidson,* 667 S.W.2d 474, 476 (Mo.App.1984). Here, appellant's attorney had sufficient time prior to trial in which to complete his discovery. And in view of the fact that appellant's attorney had received proper notification of the correct trial date, the court's refusal to grant a further continuance in this instance is not a capricious exercise of its broad discretion.

Appellant Johnson complains that the state introduced "closed records" as substantive evidence at the administrative review hearing, and, thus, her license suspension was based upon inadmissible evidence. Further, she complains that she was denied her rights of confrontation and cross-examination when the hearing officer took judicial notice of the closed records in the Department case file and heard no testimony.

The records contained in the Department of Revenue case file included the verified police report from the arresting officer, the arrest report, sobriety and breathalyzer test results, the traffic ticket charging appellant with driving while intoxicated and the alcohol influence report. Records such as these which pertain to one's arrest and detention are ordinarily closed once criminal charges against a defendant are dis-

missed, as in the appellant's case. Section 610.105, RSMo Cum.Supp.1984.

These records were admissible, however, by virtue of § 610.120, RSMo Cum.Supp. 1984, which states that closed records, while inaccessible to the general public, shall be made available "to courts, administrative agencies, law enforcement agencies, and federal agencies for purposes of litigation, sentencing, parole consideration and to federal agencies for such investigative purposes as authorized by law or presidential executive order."

Appellant infers that the records are not admissible since the license suspension procedures set forth in §§ 302.500–.540 are civil in nature rather than criminal and are not employed for purposes of prosecution. But, as the above cited statute indicates, the administrative agency may also utilize the records for purposes of litigation. The administrative hearing is a contested case in which the state appears in an adversarial posture. Thus, the proceeding properly can be considered "litigation." The records are not "closed" to the administrative agency, and they properly can be introduced in the review hearing. Certainly, the legislature manifested its intent that the Department of Revenue be allowed to employ such records. Section 302.510 requires the arresting officer to forward such records to the Department as a part of his verified report. And, as stated, the Department is to employ the report in making its initial determination pursuant to § 302.505. Further, "[t]he disposition of ... criminal charges shall not affect any suspension under this section." Section 302.505.3. The records were admissible in the administrative proceeding, and there was no impropriety in the hearing officer's consideration of those records.

If a prima facie case is presented through the records in the Department case file, the Department should not be required to present witnesses at the administrative hearing. This is because the Missouri Administrative Procedure Act, in particular, § 536.070(2), RSMo 1978, provides each party with the opportunity to call and

examine witnesses, to introduce exhibits and "to impeach any witness regardless which party first called him to testify." Further, any aggrieved person in a contested case has a right to subpoena any witness to appear at the administrative hearing. Section 536.077, RSMo 1978.

■ If appellant Johnson desired to confront the arresting officer, she needed only to request that the officer appear at the hearing. The existence of this unbridled subpoena right undercuts any argument that the administrative hearing procedure was unfair. Finally, the United States Supreme Court has acknowledged that "something less than an evidentiary hearing is sufficient prior to adverse administrative action." *Dixon v. Love*, 431 U.S. 105, 113, 97 S.Ct. 1723, 1728, 52 L.Ed.2d 172 (1977) (*quoting Mathews v. Eldridge*, 424 U.S. 319, 343, 96 S.Ct. 893, 907, 47 L.Ed.2d 18 (1976)). We find that the procedures provided appellant Johnson were constitutionally sufficient and that she was not denied her rights of confrontation and cross-examination.

Accordingly, the judgments of the circuit court in upholding the suspension of the appellants' driving privileges are affirmed.

HIGGINS, BILLINGS, BLACKMAR and DONNELLY, JJ., concur.

RENDLEN, C.J., dissents in separate opinion filed.

WELLIVER, J., dissents and concurs in separate dissenting opinion of RENDLEN, C.J.

RENDLEN, Chief Justice, dissenting.

I respectfully dissent. If *no* evidence was presented at the de novo hearings establishing that, at the time of arrest, the officers had probable cause to believe that each of the appellants was driving while the alcohol concentration was 13/100 of one percent or more, then reversal would seem to be proper. However, because of the uncertainty in this new procedure remand should be ordered to allow for the development of evidence regarding the arresting officer's belief.

Section 302.505.1, RSMo Cum.Supp.1983, explicitly requires that the arresting officer have "probable cause to believe" *at the time of the arrest* that the subject's alcohol concentration was 13/100 of one percent or more. Moreover, the section provides that the department shall suspend the driver's license only upon its determination that the arresting officer had probable cause for such belief. That is, did the suspect appear more than mildly intoxicated at the time of arrest? What behavior informed the officer of the level of intoxication? However, a careful reading of the statute does not permit the department to suspend a driver's license *merely* on the basis of the officer's initial belief, as the principal opinion suggests. The statute clearly refers to alcohol concentration in the person's blood or breath—indicating that subsequent testing will occur which, if in verification of the officer's belief, shall lead to license suspension. Thus, to conform the process to the statutory requirement these cases should be remanded for further proceedings to develop evidence regarding the arresting officer's beliefs at the time of arrest and if the necessary probable cause is shown the evidence of any subsequent chemical tests should be considered and these facts in combination would provide the basis for the administrative license suspension determination.