Erin Marie FITZGERALD, Respondent,

v.

DIRECTOR OF REVENUE, STATE OF MISSOURI, Appellant.

No. 20499.

Missouri Court of Appeals, Southern District, Division One.

May 29, 1996.

Jeremiah W. (Jay) Nixon, Atty. Gen., Ronald D. Pridgin, Special Asst. Atty. Gen., Mo.

Dept. of Revenue, Jefferson City, for appellant.

GARRISON, Judge.

The Director of Revenue (Director) issued a Notice of Suspension of Driving Privileges [1] to Respondent pursuant to §§ 302.500–.541 [2] after making a determination that she had been arrested upon probable cause to believe she was driving a motor vehicle while the alcohol concentration in her blood was .10% or more. The suspension/revocation was sustained following an administrative appeal. Respondent then sought a trial *de novo* in the circuit court which ordered that her driving privileges be reinstated. The Director appeals from that order. We reverse and remand with directions.

The Director contends that the trial court erred because, under the facts of this case, the suspension/revocation was authorized by § 302.505.1.[3] That section provides in part:

    1. The department shall suspend or revoke the license of any person upon its determination that the person was arrested upon probable cause to believe he was driving a motor vehicle while the alcohol concentration in the person's blood or breath was ten-hundredths of one percent or more by weight of alcohol in his blood, based on the definition of alcohol concentration in section 302.500.

    2. The department shall make a determination of these facts on the basis of the report of a law enforcement officer required in section 302.510, and this determination shall be final unless a hearing is requested and held. . . .

At the commencement of the trial *de novo*, Respondent's attorney told the trial court that Respondent did not dispute that there was probable cause to request that she take the breath test, and that she tested .32%. He said: "What we do dispute is the fact under this case that this particular Defendant has a particular blood condition which made her—

the blood test results abnormal and not reliable insofar as the Statute goes, and also goes to the issue of whether she had any reason to believe or any knowledge that she would have been intoxicated or any intent to violate the law in that respect."

Respondent testified that on October 1, 1994 she drank four or five glasses of wine at her parents' home between 4:00 p.m. and 12:00 to 12:30 a.m. when she drove to meet a friend. She said that as a result of a previous DWI, she had attended an Alcohol Related Traffic Offenders Program (ARTOP) where she learned that a body will normally metabolize one glass of wine or one beer per hour. Based on this information, she testified that she believed her alcohol consumption was within the guidelines outlined in the ARTOP program.

Upon leaving her parents'. home, she was involved in an automobile accident when her right wheel went off the pavement. In attempting to get back onto the pavement, she overcompensated and turned the car over. When a highway patrolman came to the scene, Respondent told him she had had "three drinks, beer." She failed at least portions of a field sobriety test, and registered .32% on the Breathalyzer.

Her father testified that he observed Respondent at the jail following the accident where she had slurred speech, was verbally abusive, irrational, and he was sure she could not have stood on one leg. He testified that because Respondent had not been in that condition when she left his home, he later arranged for her liver and enzyme condition to be tested at a local hospital. During the test, she was given one glass of wine each hour for four hours, but she was still legally intoxicated thirteen hours later. This was interpreted as indicating that her liver was not properly metabolizing alcohol.

---

**1.** The Director's brief states that Respondent's driving privileges were revoked. Whether they were suspended or revoked does not clearly appear from the legal file, but is inconsequential to this appeal in that either action is subject to the same judicial review. *Cook v. Director of Revenue*, 890 S.W.2d 738, 739 n. 1 (Mo.App. S.D. 1995). Because of our uncertainty concerning which action was taken, we hereafter refer to it as "suspension/revocation."

**2.** All references to statutes are to RSMo 1994.

**3.** Respondent has filed no brief in this court. While there is no penalty prescribed for the failure to file a brief, we are required to decide the case without the benefit of that party's authorities and points of view. *State v. White*, 860 S.W.2d 805, 806 n. 2 (Mo.App. S.D.1993).

The trial court, in ordering the Director to reinstate Respondent's driving privileges, found:

1. The blood alcohol test administered to [Respondent] was unreliable; and

2. There was no probable cause to believe that [Respondent] was intoxicated at the time of her arrest.

■ Our review of this case is pursuant to the principles established in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). *Gordon v. Director of Revenue*, 896 S.W.2d 737, 739 (Mo.App. E.D.1995). Therefore, the decision of the trial court will be affirmed unless (1) it is unsupported by substantial evidence; (2) it is against the weight of the evidence; or (3) it erroneously declares or applies the law. *Id.*

■ The department of revenue is authorized by § 302.505.1 to suspend or revoke a person's license upon making a determination that (1) the driver was arrested upon probable cause to believe that he or she was driving in violation of an alcohol related offense (§ 577.010 or 577.012); and (2) the driver submits to a chemical analysis which indicates a blood alcohol concentration above the legal limit. *Collins v. Director of Revenue*, 691 S.W.2d 246, 252 (Mo.banc 1985); *Gordon v. Director of Revenue*, 896 S.W.2d at 739. Probable cause for the arrest and a chemical analysis demonstrating a blood alcohol content of .10% or more fully satisfies the requirements of § 302.505.1. *Stewart v. Director of Revenue*, 702 S.W.2d 472, 475–76 (Mo.banc 1986).

■ In the instant case, these elements were not disputed. Not only was the existence of these criteria uncontroverted in the evidence, they were also effectively admitted by Respondent when her attorney conceded that there was probable cause to request that Respondent take a chemical test of her blood

alcohol content, and that the test result was .32%.[4]

Respondent's argument in the trial court, however, sought to effectively relieve a person from the application of § 302.505.1 if that person has a condition which causes the body to slow the process of metabolizing alcohol. She cited no authority to the trial court in support of this theory, however, and our own research has failed to reveal any.

Sections 302.500–.541 are designed to expeditiously remove drunk drivers from Missouri roadways. *Collins v. Director of Revenue*, 691 S.W.2d at 252. *See also Stewart v. Director of Revenue*, 702 S.W.2d at 475. There is no language in § 302.505 indicating a legislative intent that it is inapplicable if a particular person's body does not function normally. In fact, our courts have recognized the validity of a specific blood alcohol level authorizing suspension or revocation of driving privileges, even though blood alcohol content "affects different people in different ways." *Collins v. Director of Revenue*, 691 S.W.2d at 250.

Likewise, contrary to Respondent's suggestion to the trial court, there is no language in § 302.505 indicating that its operation is affected by any issue of intent or a person's knowledge of a physical abnormality. The statute in question is among those laws designed to protect people on our highways from intoxicated drivers. *Id.* To interpret § 302.505 as Respondent suggested to the trial court would effectively limit its operation in achieving that purpose.

■ The finding of the trial court that there was no probable cause to believe that Respondent was intoxicated at the time of her arrest was not supported by substantial evidence and was contrary to her attorney's admission prior to the commencement of the trial *de novo*. Its finding that the blood alcohol test administered to Respondent was

4. An arrest for any offense arising out of acts which the arresting officer has "reasonable grounds" to believe were committed while a person was driving in an intoxicated condition triggers the consent to chemical tests to determine alcohol content of blood. § 577.020. *See also* § 577.041. "Reasonable grounds" and "probable cause" are virtual synonyms. *Wilcox v. Director*

*of Revenue*, 842 S.W.2d 240, 242 (Mo.App. W.D. 1992). The type of probable cause necessary to effectuate an arrest for an alcohol-related violation is the type of probable cause required to *suspend or revoke an operator's license under* § 302.505. *Cook v. Director of Revenue*, 890 S.W.2d at 739.

"unreliable" was not only unsupported by substantial evidence, but it also constituted an erroneous application of law. A claim that blood alcohol test results are invalid can only succeed if there is some evidence to suggest a malfunction of the machine. *Thurman v. Director of Revenue,* 745 S.W.2d 260, 262 (Mo.App. E.D.1988). There was no such evidence here.

We reverse the trial court's order and remand the cause to the trial court with instructions to enter a judgment reinstating the suspension/revocation of Respondent's driving privileges.

MONTGOMERY, P.J., and BARNEY, J., concur.