E. R. DARLINGTON LUMBER COMPANY, Appellant, v. JAMES T. SMITH BUILDING COMPANY et al., Respondents.

St. Louis Court of Appeals, December 1, 1908.

1. MECHANICS' LIENS: Original Contractor. A party furnishing material for a building is an original contractor within the purview of section 4207, Revised Statutes 1899, and such original contractor must file his account for a mechanic's lien within six months after his indebtedness shall have accrued.

2. ———: ———: Continuing Account. Where, in an account for material furnished for a building, there was an interval of six months between the last item of the account and the one preceding, and where the evidence tended to show that the material furnished under the last item was for parts of the building called for in the plans and specifications, and that the building, after the next to the last item was furnished, was suspended in its construction on account of the cancellation of the build-

ing permit, and as soon as the building permit was reinstated, the last item was furnished, the account was a continuing one and the materialman could file his lien for his material furnished within six months from the date of such last item.

3. ———: ———: ———: **Jury Question.** And in such case where the evidence was conflicting as to whether the account was completed before the furnishing of the last item, or whether the last item was furnished on the continuing account, the question was for the jury.

Appeal from St. Louis City Circuit Court.—*Hon. Chas. Claflin Allen,* Judge.

REVERSED AND REMANDED.

*Reynolds & Reynolds* for appellant.

*Stephen C. Rogers,* by *McKark,* for respondents.

NORTONI, J.—In this action, plaintiff seeks a personal judgment against the defendant building company and the enforcement of a mechanic's lien against the buildings now owned by the other defendants. At the conclusion of the evidence on behalf of the plaintiff, the circuit court peremptorily directed a verdict to the effect that the lien could not be enforced against the property. Plaintiff recovered a personal judgment against the Smith Building Company for the amount sued for and appealed from the ruling of the court with respect to the lien sought to be enforced against the buildings owned by the other defendants. Plaintiff furnished materials for the buildings and the important question in the case relates to the continuity of the lien account.

The first item of account is of date January 18, 1904. It appears from the account that materials were furnished every few days until December 9, 1904, and no materials were furnished thereafter during the interim of nearly six months, or until June 6, 1905. Our statute, sec. 4203, R. S. 1899, sec. 4203, Mo. Ann. St. 1906, gives a lien to the materialman for materials

furnished under contract with the owner of the building. A party furnishing the material for a building is an original contractor within the purview of section 4207, R. S. 1899, sec. 4207, Mo. Ann. St. 1906. A limitation is prescribed by that section, however, to the effect that he shall file his lien account as therein indicated within six months after the indebtedness "shall have accrued." The indebtedness is said to have accrued in lien cases when it becomes completed by the materialman furnishing the last material for the building under his contract. [Bolen Coal Co. v. Ryan, 48 Mo. App. 512.]

The lien in this instance was filed September 6, 1905, and within six months from the date of furnishing the last item of material, in amount, $1.70, on June 6, 1906. If, however, the continuity of the account under the original contract, ceased with the item of December 9, 1904, then the lien was filed out of time and the court properly directed a verdict to the effect that it could not be enforced. To have justified the court in directing a verdict for the defendant, there must appear no substantial evidence tending to prove continuity of the account after December 9, 1904; or in other words, there must appear no substantial evidence tending to prove that the item of June 6, 1905, was intended by the parties as parcel of the continuing account for materials furnished under the original contract. [Routsong v. Railway, 45 Mo. 236; Moody v. Deutsch, 85 Mo. 237, 243.] From what has been said, it appears the question for decision is whether the evidence wholly fails to show continuity of the account after December 9, 1904, and conclusively establishes that the lumber furnished on June 6, 1905, was not contemplated by the parties as an item of the continuing account and is therefore extraneous of or not within the original contract.

The evidence on the part of plaintiff tended to

prove that the defendant Smith Building Company owned a single lot of ground fronting fifty feet on Shenandoah avenue in the city of St. Louis. Desiring to construct two buildings containing two flats each thereon, Mr. Smith, president of the company, called upon the manager of the plaintiff, Darlington Lumber Company, for prices upon lumber to be used in the construction thereof. They discussed the matter of the buildings and the character of lumber to be used therein. Mr. Smith submitted a written list containing a portion of the materials to be used. The manager of plaintiff company agreed to furnish all on the list, and such other materials to be used in the two buildings and not on the list, as might be required, at an agreed price per foot or per hundred feet. The proposition was accepted by Mr. Smith and on January 18, 1904, the first material was furnished under this agreement. As stated before, the materials were furnished every few days until December 9, 1904. It appears that all of the materials furnished were used by the Smith Building Company in the construction of the two buildings, Nos. 4227 and 4229 Shenandoah avenue, on which, together with the single lot of ground, the lien is sought to be enforced. For each load of lumber delivered at the buildings, a receipt in the form of a dray ticket was executed by Mr. Smith or some one for him having authority so to do, and these receipts, more than forty in number, were returned to the plaintiffs. A number of these receipts are indorsed across the face of each, "on contract." Nine of them, however, are indorsed "extra;" of these nine dray tickets or receipts for lumber, the one amounting to $1.70, of date June 6, 1905, has indorsed on its face, "extra." It appears that the buildings were practically completed in December, 1904. Besides the shelving in a closet in one of the buildings called for in the plans and specifications, there remained to be constructed the granitoid

walks thereabout; also certain anchor rods to tie the brick walls of the buildings had not yet been put in. About this time, Mr. Smith, president of the defendant building company, gave the manager of the plaintiff lumber company, and order on Mr. Parker for a considerable amount of money to be applied on account. A payment on account had been made in May theretofore. It does not appear that the order given in December, covered the entire amount then accrued. Mr. Parker declined to pay the order, however, and the amount was not collected. It seems that the west building, No. 4229, was rented to a tenant about this time, and a few months thereafter, sold to one of the defendants in the present action. Both the manager of plaintiff company and Mr. Smith of the building company gave evidence to the effect that the buildings were not then completed. They say that about that time the building commissioner of the city of St. Louis found some fault with the character of the brick used in the walls of the buildings and revoked the building permit and further operations were therefore suspended. Mr. Smith said, upon visiting the buildings, a police officer refused to permit him to enter. The manager of plaintiff company requested Mr. Smith several times during this period to pay him an amount on account. Mr. Smith, on each occasion, told him the buildings were not yet completed and that as soon as he got leave from certain works on which he was then engaged about the World's Fair, and disposed of his trouble with the city building department, he would call for the balance of the material required, complete the buildings, and settle the entire account. It appears that the completion of the buildings was deterred between December 9, 1904, and June 6, 1905, because of the disagreement with the city building department over the character of the brick employed in the construction of the walls. The matter was finally

taken before the board of appeals for such cases and determined in favor of the Smith Building Company. The building permit was reinstated and the east building, No. 4227, sold to Mr: Crawford, another one of the defendants. Mr. Crawford required its completion, however, by the Smith Building Company as part of his purchase, and after the final determination of the controversy with the city building department, Mr. Smith called upon and procured the lumber item of $1.70 on June 6, 1905, with which to complete the closet therein. Mr. Smith testified that this lumber was called for under the original plans and specifications of the building, and that it was therefore in contemplation of the parties at the time of his verbal contract with the plaintiff to furnish all of the lumber to be used in the two buildings. It appears that although this lumber was not on the original list produced by Mr. Smith when he negotiated with the plaintiff for prices, it was incorporated in the verbal agreement to the effect that all other lumber required for the buildings would be furnished, whether on the list or not, at the price given, and that therefore the writing of the word "extra" on the dray ticket pertaining to this lumber, signified that it was extra of the list only and not extra of the contract between the parties in the first instance.

Defendant's counsel insists the plaintiff's account was completed and therefore the indebtedness accrued on December 9, 1904. Much stress is laid upon the circumstance that the dray ticket pertaining to the item for lumber furnished on June 6, 1905, was marked "extra." It is said this signifies the lumber then furnished was not under the contract out of which plaintiff's account arose. The fact of the indorsement "extra" on the dray ticket is no doubt a circumstance tending to prove that the materials therein mentioned were extraneous of the contract. However this may

134 App—21

be, such fact is certainly not conclusive and it is competent to explain it. Besides this particular dray ticket of date June 6, 1905, it appears eight other dray tickets were marked "extra" as well. These tickets are of different dates and run along through the account at different periods during the several months in which it accrued. The manager of plaintiff lumber company gave evidence touching this matter to the effect that he turned over to plaintiff's shipping clerk the list of materials required by Mr. Smith when the contract for materials was first entered into, together with the price thereof at which the materials were to be furnished, with instructions to charge the Smith Building Company the prices therein indicated on such materials and to charge all other materials furnished for the two buildings at the same price per line linear foot. He said such materials were not on the original list, were marked "extra" on the dray tickets for the purpose only of signifying they were "extra" of the list, to the end that they might be carried into an account under the same arrangement for prices and at the same time be distinguishable in the accounts of the office. However it may be with respect to the indorsement of the word "extra" across the face of the dray ticket, both Mr. Tilden, manager of the plaintiff, and Mr. Smith, president of the building company, testified that the item of lumber amounting to $1.70 of date June 6, 1908, was included in the original plans and specifications of the building and therefore contemplated in the original contract by which the Smith Building Company, through its president, Mr. Smith, purchased the lumber from the plaintiff. Even though one of the buildings was occupied by a tenant and both had been sold prior to the final item of account, their completion had been suspended, as was well known by both plaintiff and the building company owner, because of the revocation of the building permit heretofore men-

tioned. Although the buildings were practically completed and the work suspended thereon for nearly six months, the evidence of both plaintiff's manager and the president of the building company tends to prove that this suspension was because of the revocation of the building permit and that both parties understood the buildings were not completed, and that further material would be obtained from the plaintiff on the same account and used in the buildings under the original contract. There is certainly no evidence in the case of any new or additional contract for the purchase of materials and aside from the indorsement on the dray ticket itself, none tending to prove the materials furnished under date of June 6, 1905, were for extras not included in the original contract. Where the parties intended the items to be included in one account and settlement, the entire account will be treated as a continuing and connected transaction and the lien limitation will begin to run from the last item of account, even though a considerable period may elapse between the concluding items. [Darlington Lumber Co. v. Harris, 107 Mo. App. 148-155; Fulton Iron Works v. North Center Min., etc., Co., 80 Mo. 265; Boylan v. Steamboat Victory, 40 Mo. 244, 251; Bruns v. Braun, 35 Mo. App. 337, 344; Squires v. Fithian's Admr., 27 Mo. 134.] It was for the jury to say whether or not the account was completed on December 9, 1904, and the indebtedness then accrued, or whether the item on June 6, 1905, was furnished on the continuing account, in accord with the intention of the parties under the original contract. [Hayden Slate Co. v. Anderson, 76 Mo. App. 281; Drey v. Ridpath, 60 Mo. App. 135, 138; General Fire Extinguishing Co. v. Farmers Elevator Co., 165 Mo. 171.]

The judgment will be reversed and the cause remanded. It is so ordered. *Bland, P. J.,* and *Goode, J.,* concur.