**STATE of Missouri ex rel. Donald G. BLACKWELL, Fred A. Guy, Jr., William O. Hill, Thomas L. Vetter and John E. L. Brewer, Individually and as the Committee of Petitioners, Appellants,**

v.

**John K. TRAVERS, Judy Svetanics, Donald E. West and George T. Mehan, Jr., as the Board of Election Commissioners for the City of St. Louis, Missouri, Respondents.**

**No. 42423.**

Missouri Court of Appeals,
Eastern District,
Division Three.

April 15, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 19, 1980.

Jerome A. Diekemper, Richard Shinners, Diekemper, Hammond & Shinners, Clayton, for appellants.

Joseph L. Niemann, City Counselor, St. Louis, for respondents.

WEIER, Judge.

This is a suit to compel the Board of Election Commissioners of the City of St. Louis by mandamus to place an initiative on the ballot at the next general election. The Circuit Court of the City of St. Louis granted an alternative writ of mandamus but subsequently quashed it and this appeal followed. We reverse the judgment of the circuit court and order the writ of mandamus to be made permanent.

This controversy centers on whether or not the St. Louis Board of Election Commissioners has a duty, as dictated by the St. Louis City Charter, to place an initiative proposition to amend the city charter on the ballot at the next general election in the City of St. Louis to be held on August 5, 1980. Appellants constituting the committee of petitioners within the meaning of Article V of the Charter seeking the writ contend that all procedural requirements required by the charter have been met and the Board of Election Commissioners is under an affirmative duty, with no power of discretion, to ensure the initiative's placement on the ballot at the next general election, to-wit, August 5, 1980. Respon-

dent Board of Election Commissioners contends that in the absence of a greater number of signatures on the initiative petitions no special election need be called and that the time period in which the initiative must be placed on the ballot at a general city election has expired.

This divergence of interpretation arises out of the wording of Article V of the City Charter which creates a method of amending the charter by the initiative as an alternative to the more common mode of revision commenced by legislative enactments of the Board of Aldermen. Article V— "Initiative" Revised Code of City of St. Louis. Vol.–1, pp. 22–24, 1960. Article V recites the procedural requirements necessary for initiative placement on the ballot. The parties have both stipulated that all procedural requirements for the initiative were, in fact, complied with.

The facts illustrate the problem. The petition to the Board of Election Commissioners proposed an ordinance calling for the submission to the qualified voters of an amendment to the charter which would take the fire department out of the department of public safety and place it in a new department of fire and fire prevention which would be headed by a fire chief appointed by the mayor from the three highest on the list of eligibles certified by the director of personnel of the city. Qualifications for the job are set out in the amendatory section. Copies of the petition duly signed by registered voters of the city in excess of 10%, but less than 15%, of all of the registered voters of the city at the time of the next preceding regular mayoralty election were filed with the Board of Election Commissioners on February 13, 1979. On February 14, 1979, the Board certified the sufficiency of the petition together with a copy thereof to the Board of Aldermen of the City of St. Louis. The Board of Aldermen received the certified petition on February 16 and failed to pass the ordinance proposed by the petition within 60 days of the regular meeting following receipt of the certification. The fact of this failure of the Board to pass the ordinance was in turn

duly certified by its clerk to the Board of Election Commissioners and the members were formally notified of this certification at the regular meeting of April 23, 1979. The next regular election at which the submission of the ordinance could be submitted to the electorate of the city would be August 5, 1980, the date of the primary election.

On April 26, 1979, the Board of Election Commissioners by letter of that date informed the committee of petitioners that there was no primary or general election scheduled to be held between 30 and 90 days after certification to it by the Clerk of the Board of Aldermen so as to enable the proposed ordinance to be submitted to the voters. It further stated the Board would consider a date in June 1979 for a special election provided that the signatures of registered voters on petitions would be obtained and submitted in addition to those already on the petitions so they would total at least 15% of the registered voters at the last preceding regular election for the office of mayor. In order to call such a special election 20 days were given for the submission of the additional signatures.

The sections of the city charter upon which the appellants and respondents both rely read as follows:

"Sec. 2. Petition required.—Such an ordinance shall be proposed by petition signed by registered voters equal in number to five percent or, in case the proposed ordinance is for the submission of an amendment to the charter, ten per cent of all the registered voters of the city at the time of the last preceding regular mayoralty election. Each of the papers comprising the petition shall contain the proposed ordinance in full and designate by names and addresses five persons as the committee of the petitioners."

"Sec. 4. Certification of petition; submission of proposed ordinance to voters. —If the board of election commissioners find that the petition, with supplements, if any, is sufficient, it shall forthwith certify that fact, together with a copy of the petition, omitting signatures, to the board of aldermen. Unless the proposed ordinance is, without amendment, adopted and approved by the mayor, or adopted, without amendment, over his veto, within sixty days after the regular meeting of the board of aldermen next after said certification, or unless four members of the committee of the petitioners shall, within fifteen days after the expiration of said sixty days, state in writing to the clerk of the board of aldermen that there is no necessity for submitting the proposed ordinance to the voters, said clerk shall forthwith certify the failure to adopt same to the board of election commissioners. Said board of election commissioners shall thereupon provide for submitting said proposed ordinance, in its original form, to the voters at the first election at which such submission may lawfully be had, not less than thirty days after such certification to it by said clerk, and if there is no such election within ninety days after such certification, and the petition shall be signed by registered voters equal in number to seven per cent, or in case the proposed ordinance is for the submission of an amendment to the charter, fifteen per cent, of all the registered voters of the city at the time of the last preceding regular mayoralty election, then such submission shall be at a special election to be held within such ninety days if legally possible, otherwise at the earliest day on which such submission may be had at either a general or special election."

The petitioners urge that Section 4 requires once the Clerk of the Board of Aldermen has certified the petition back to the Board of Election Commissioners, the petition must be placed as an initiative on the ballot at the first election which can be no earlier than 30 days after certification; and if the petition has at least 10% of all registered voters at the last mayorality election, but less than 15% thereof, then the petition must wait until the next general or special election even if it would mean a greater delay than 90 days. On the other hand respondent Board of Election Commission-

ers contends that under the wording of Section 4 unless the petitioners would come up with additional signatures to total at least 15% of registered voters the proposition could not be submitted at the next regular or special election to be held in St. Louis, to-wit, the primary election on August 5, 1980, because this would be beyond the period of 90 days. And as a consequence, the Board argues there would be a forfeiture of the right to have the proposition placed before the electorate. The Board agrees with the petitioners' interpretation that petitions with either 7% of the voters in the case of a regular ordinance or 15% in the case of a charter amendment require a special election to be called if no other election is to be held within the 90-day period. But if the petition fails to carry signatures of 15% of the voters as set forth in Section 4, *supra*, the Board submits no special election can be called and it is without authority to place the initiative on the ballot at the next general election unless that election occurs within 90 days of certification.

We construe the meaning of Section 4 in light of well established legal principles of legislative construction. A legislative act allowing people to exercise their democratic right to determine issues must be liberally construed to effectuate the purpose of the act. Liberal construction of provisions which reserve to the people the power of the initiative is particularly favored so as to make effective this reservation of power. *State ex rel. Voss v. Davis*, 418 S.W.2d 163, 166[4] (Mo.1967).[1] We are also guided by certain recognized canons of construction, among which are: "[T]he naked letter of the law must gently and a little give way to its *obvious* intendment." *Rutter v. Carothers*, 223 Mo. 631, 122 S.W. 1056 (1909).

Article V, Section 1 of the Charter speaks on the purpose of the initiative when it says: "The people shall have power, at their option to propose ordinances, including ordinances proposing amendments to this charter, and to adopt the same at the polls, with the same effect as if adopted by the board of aldermen and approved by the mayor, such power being known as the initiative." The initiative is a tool of participatory democracy and its purpose is to allow the electorate to resolve questions where their duly elected representatives failed to act on them or refuse to proceed with a change which the public desires. In our reading of Section 4, Article 5 of the City Charter, *supra*, we do not find any provision to cause a forfeiture of the right to have the citizenry express their opinion on the propriety of a charter amendment merely because certification from the Board of Aldermen is received by the Board of Election Commissioners at a time that would prohibit submission of the question to the electorate at a regular election within 90 days following such certification. It is obvious that the plain intent of the Article as expressed in Section 1 is to allow voters to pass on the merits of a proposal. Obviously the reference to 15% or more in case of charter amendment would be applicable only to cause the Board to set a special election with all of its attendant expense when no regular election occurs within 90 days, but it is also plain that it is the intent to allow those propositions which have the support of at least 10% of those voting at the last election of a mayor be passed on by the electorate at the next election not specially called for that purpose. For that reason we interpret the wording of Section 4 of Article V, *supra*, as it applies to the facts here to mean that after procedural requirements have been met, upon failure of the Board of Aldermen to adopt a proposed ordinance and upon the certification thereof to the Board of Election Commissioners "[s]aid board of election commissioners shall thereupon provide for submitting said proposed ordinance, in its original form, to the voters at the first election at

---

1. In applying the provisions of an initiative section of the Kansas City Missouri Charter, the court here suggested that a provision relating to the sufficiency of petitions should not be applied as though it was "a rule in a checker game, where once your hand is off the man the move is final" (quoting *Dagley v. McIndoe*, 190 Mo.App. 166, 176 S.W. 243, 247 (1915)).

which such submission may lawfully be had, not less than thirty days after such certification to it by said clerk, and . . . such submission shall be . . . at the earliest day on which such submission may be had at either a general or special election." That portion of the section last above quoted is in our opinion the part applicable to the facts in this case. That portion omitted is the part requiring a special election if signatures equal 15% in case of a charter amendment and in that situation a special election must be called when no regular election is to be held after 30 days and before 90 days following certification.

If this be not so, then the purposes of the initiative provisions could be thwarted by fate of having no regular election within the 90-day limit after certification to the Clerk of the Board of Election Commissioners. A caprice of the calendar would invalidate a set of petitions bearing the signatures of 10% of the registered voters and valid under the requirements of Section 2. This would be a sad end to an endeavor meeting all the other requirements of the charter.

The judgment of the circuit court is reversed and the case is remanded with instructions to issue a permanent writ of mandamus to respondents requiring them to submit the proposed charter amendment to the voters of the city at the election to be held on August 5, 1980.

DOWD, P. J., and REINHARD and CRIST, JJ., concur.