BCI CORPORATION, et al., Plaintiffs,

v.

CHARLEBOIS CONSTRUCTION
CO., Defendant,

and

Robert W. Denton, Defendant-Appellant,

and

First Federal Savings & Loan Assn.,
Defendant-Respondent.

No. 65549.

Supreme Court of Missouri,
En Banc.

June 19, 1984.

Marvin Tofle, Columbia, for defendant-appellant.

Craig A. Van Matre, Columbia, for defendant-respondent.

BLACKMAR, Judge.

The judgment is reversed and the case is remanded for the reasons set out in the opinion of the Court of Appeals, which we

adopt and which is attached as an appendix to this opinion. We write briefly in response to points vigorously urged by counsel for respondent in the transfer documents and in oral argument.

■ The respondent apparently contends that the ten-day requirement of § 429.100, RSMo 1978 exists for the benefit of persons in addition to the owner of the real estate sought to be charged with the lien, and should be applied to a laborer hired directly by the owner, in order that these other persons might have notice. It is suggested that respondent, a lender, might make a payout which it would have held up on if it had had notice of a lien claim. The notice, however, is for the benefit of the owner and the owner alone, so that the owner may take protective steps against the principal contractor if others are not paid. Cases over the years have held that the notice need be given, if it is required at all, only to the person who was the owner at the time the work was done or materials furnished. Notice is not required to persons who subsequently become owners, or to persons involved in the lending process, whether trustees or cestuis que trust. The numerous holdings are found in Note 4 to V.A.M.S. § 429.100. It follows that no notice is required when the claimant is an employee of the owner.

■ The respondent also claims that, in the absence of a pleading stating a claim against it, it does not know what priorities are claimed against the interest which it acquired on foreclosure of its deed of trust, or what affirmative defenses it might have against the appellant's lien claim. Issues of the priority of the appellant's lien claim may be perfectly well litigated on remand, and there is no obstacle to the assertion by respondent of any defense it might want to raise to the lien claim. It also has access to discovery procedures. Dispositions on the pleadings are not favored when there is no obstacle to full resolution of the issues.

*R.J. Stephens Drywall & Painting Co. v. Taylor-Morley-Simon, Inc.,* 628 S.W.2d 374 (Mo.App.1982), alleged to be in conflict with the opinion of the Court of Appeals, involved a contractor who had "furnished labor and material," so that there were others with a potential lien claim. The owner was therefore within the class of persons within the protection of § 429.012, RSMo 1978. The case has no application to the situation before us, in which the appellant sought to recover solely for his own labor.

The judgment denying the lien is reversed and the cause is remanded for further proceedings as may be appropriate.

RENDLEN, C.J., and WELLIVER, HIGGINS and GUNN, JJ., concur.

BILLINGS, J., dissents in separate opinion filed.

DONNELLY, J., dissents and concurs in separate dissenting opinion of BILLINGS, J.

APPENDIX

MISSOURI COURT OF APPEALS

WESTERN DISTRICT

BCI CORPORATION, et al.,
          Plaintiffs,

          vs.

CHARLEBOIS CONSTRUCTION COMPANY,
          Defendant,

     and

ROBERT W. DENTON,
          Defendant-Appellant,

     and

No. WD33308

Opinion Filed:
Sep. 20, 1983

FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION,
Defendant-Respondent.

APPEAL FROM THE CIRCUIT COURT OF BOONE COUNTY
HONORABLE FRANK CONLEY, JUDGE

Before DIXON, P.J., KENNEDY and LOWENSTEIN, JJ.

## PER CURIAM:

Appellant Denton seeks to enforce a mechanic's lien on Lot 83 of Kitty Hawk Manor, Plat No. 2. The trial court awarded judgment in favor of Denton against Charlebois Construction Company, but denied Denton a lien on the ground that he had not complied with the notice provisions of the Mechanics' Lien statute. We hold that Denton was not subject to the requirements of the notice provisions contained in either Section 429.012 or Section 429.100.[1]

Charlebois Construction Company ("Charlebois") was a corporation engaged in general construction work. In January 1980 it bought Lot 83 of Kitty Hawk Manor, Plat No. 2, on which it intended to build four apartment buildings containing 32 apartment units. For some period of time prior to the acquisition of Lot 83 and continuing thereafter, Denton was employed by Charlebois as its construction supervisor. The pay arrangement was that Denton would receive $360 per week plus a bonus of $250 per apartment unit, the bonus to be paid in three stages as work on each apartment was completed.

Charlebois commenced construction work, and all of the proposed structures were under roof by July 1980. However Charlebois ran out of money and for that reason terminated Denton on July 28, 1980, and ended its business operations not long thereafter. At the time of his termination, Denton had received all of his weekly salary but $6,400 due to him as bonus money remained unpaid.

On September 4, 1980, BCI Corporation filed suit to enforce its mechanic's lien against Lot 83. On September 12, Denton gave Charlebois notice of his claim to a mechanic's lien and four days later, on September 16, he filed his mechanic's lien.

On October 22, 1980, First Federal Savings and Loan Association ("First Federal") foreclosed on Lot 83 under a deed of trust and bid in the property. On November 21, 1980, Boone County Lumber Company moved to intervene and to add parties and on December 1, Boone County filed its petition to foreclose its mechanic's lien in the form of an equitable mechanic's lien proceeding under Section 429.270. Among the parties added as defendants were Denton and First Federal.

On December 15, 1980, First Federal sold the real estate in question to Phillip and Vesta Holtgraves. Thereafter, on December 31, 1980, Denton filed a "Separate Answer and Cross Claim of Defendant Robert W. Denton Against Defendant Charlebois Construction Company." In his prayer, Denton prayed judgment in the amount of $6,400 against Charlebois, the declaration of a lien, that the court order that lien to be a superior and senior lien upon the real estate, and that "the Court marshall, apply and distribute the proceeds arising from the sale of said real estate hereinabove described according to the rights, interests and priorities of the various parties to this action...."

First Federal filed a motion to dismiss Denton's answer and cross claim on March 12, 1981. Denton's claim finally came on for hearing on September 16, 1981. By that time, all other lien claims had been settled and had been dismissed with prejudice.

At the outset of the hearing, First Federal objected to the court proceeding on the ground that Denton had filed no claim against it, and that First Federal had had

---

1. All sectional references in this opinion are to RSMo.1978.

no opportunity to plead any special defenses other than those raised by its motion to dismiss. In the latter respect, First Federal argued to the trial court: "He's never asked for any relief against us. I have got all kinds of affirmative defenses I might have chosen to raise in my answer. Procedurally failure to raise them, I'd be precluded from offering evidence on them...."

First Federal further argued that regardless of the procedural problem mentioned, Denton should not be permitted to assert a mechanic's lien because of his failure to comply with the provisions of either Section 429.012 or Section 429.100. Counsel for First Federal suggested that under the peculiar circumstances presented, the court should permit Denton to proceed with evidence only in the form of an offer of proof. The trial court decided to so proceed, stating on the record: "I'm going to let you present your evidence by way of an offer of proof. I will reserve all of this issue. It will be stipulated and agreed that the other Defendant in this matter, First Federal, is by no way waiving, because of the Court's unique way of approaching this particular case, I will permit you to put your evidence...."

After the conclusion of the hearing, the court made findings of fact which included the following:

"5. Defendant Denton did not comply with any notice requirements set forth in Section 429.012 RSMo.

6. Defendant Denton was the employee of Defendant Charlebois Construction Company.

7. Defendant Denton was offered the opportunity at trial to elect as to which notice provision said Defendant desired to come under for the purpose of perfecting said Defendant's alleged mechanic's lien, but Defendant Denton declined to so elect."

The court also made conclusions of law which included the following:

"1. Defendant Denton did not furnish the requisite ten (10) day notice as required by Section 429.100 RSMo. in that

Defendant Denton's Mechanic's Lien was filed with the Office of the Clerk of the Circuit Court of Boone County, Missouri, on September 16, 1980, but the notice of intention to file said mechanic's lien was delivered to the owner/general contractor, Charlebois Construction Company, on September 12, 1980.

2. Defendant Denton has failed to perfect any Mechanic's Lien against any real property formerly owned by Charlebois Construction Company in the manner required by the Statutes of the State of Missouri.

3. All other mechanic's lien claimants in the above captioned case have dismissed their claims with prejudice."

As already indicated, the controversy in this case centers principally upon two notice provisions of the Missouri Mechanics' Lien law, Section 429.012 and Section 429.-100. Section 429.012 is a relatively new provision adopted by the General Assembly in 1974 and provides as follows:

"1. Every original contractor, who shall do or perform any work or labor upon, or furnish any material, fixtures, engine, boiler or machinery for any building, erection or improvements upon land, or for repairing the same, under or by virtue of any contract, shall provide to the person with whom the contract is made prior to receiving payment in any form of any kind from said person, (a) either at the time of the execution of the contract, (b) when the materials are delivered, (c) when the work is commenced, or (d) delivered with first invoice, a written notice which shall include the following disclosure language in ten point bold type:

NOTICE TO OWNER

FAILURE OF THIS CONTRACTOR TO PAY THOSE PERSONS SUPPLYING MATERIAL OR SERVICES TO COMPLETE THIS CONTRACT CAN RESULT IN THE FILING OF A MECHANIC'S LIEN ON THE PROPERTY WHICH IS THE SUBJECT OF THIS

CONTRACT PURSUANT TO CHAPTER 429, RSMo. TO AVOID THIS RESULT YOU MAY ASK THIS CONTRACTOR FOR 'LIEN WAIVERS' FROM ALL PERSONS SUPPLYING MATERIAL OR SERVICES FOR THE WORK DESCRIBED IN THIS CONTRACT. FAILURE TO SECURE LIEN WAIVERS MAY RESULT IN YOUR PAYING FOR LABOR AND MATERIAL TWICE.

2. Compliance with subsection 1 hereof shall be a condition precedent to the creation, existence or validity of any mechanic's lien in favor of such original contractor.

3. Any original contractor who fails to provide the written notice set out in subsection 1 hereof shall be guilty of a misdemeanor and upon conviction shall be fined not less than five hundred dollars nor more than one thousand dollars."

Section 429.100 is a much older statutory provision and provides as follows:

"Every person except the original contractor, who may wish to avail himself of the benefit of the provisions of sections 429.010 to 429.340, shall give ten days' notice before the filing of the lien, as herein required, to the owner, owners or agent, or either of them, that he holds a claim against such building or improvement, setting forth the amount and from whom the same is due. Such notice may be served by any officer authorized by law to serve process in civil actions, or by any person who would be a competent witness. When served by an officer, his official return endorsed thereon shall be proof thereof, and when served by any other person, the fact of such service shall be verified by affidavit of the person so serving."

On this appeal, Denton claims to be an "original contractor" but not of the class intended to be subject to the notice requirement of Section 429.012. First Federal, on the other hand, contends: (1) Denton was required to comply with either Section 429.012 or Section 429.100, and he complied with neither; (2) the truly applicable section is Section 429.100, with which Denton did not comply; and (3) Denton failed to seek any relief against First Federal or its transferees Mr. and Mrs. Holtgraves and therefore was entitled to no relief against those parties.

I.

*Application of Section 429.012*

■ The evidence undisputably showed and the court found that Denton was an employee of Charlebois. Generally speaking, an employer and employee operate under direct contract with each other. In that sense, Denton was an "original contractor" with Charlebois, the owner of the property.

■ However, to woodenly apply that generalization so as to bring an employee such as Denton under the notice requirement of Section 429.012 would force a distortion of the intention of that statutory provision. The reason for this provision is to warn inexperienced property owners of the danger to them which lurks in the mechanics' lien statute. An inexperienced property owner in the past was all too likely to enter into a contract with a builder for the erection of a new building or substantial renovation of an existing one, and upon completion of the work naively make payment to the builder of the full agreed contract price. Subsequently the property owner might find to his sorrow that the builder had left employees, sub-contractors and materialmen unpaid, and the owner then by virtue of the mechanic lien statutes might be forced to pay a second time to the unpaid lien claimants. In an effort to avoid this situation, Section 429.012 required the original contractor, who is presumed to be experienced and knowledgeable in mechanic lien matters, to disclose in writing the potential danger to the property owner with whom he contracts for the construction work. *See Structo Corporation v. Leverage Investment Enterprises*, 613 S.W.2d 197, 201 [10] (Mo.App.1981).

■ The necessity for such protection to the property owner presupposes that the

"original contractor" is one who is likely to, or at least may, incur obligations in connection with the work to his own employees, sub-contractors or materialmen. Only if the contractor does incur such obligation to second tier parties not in direct privity with the property owner, is there any potential problem for the property owner or any reason to give him special notice in that regard.

An employee of the owner, such as Denton here, does not fall within the classification of "original contractor" so intended. An employee such as Denton in the very nature of things will not have his own employees, sub-contractors or materialmen with whom he would incur obligations unbeknownst to his employer, the owner of the property. The reason for the notice requirement of Section 429.012 therefore simply does not exist when the lien claimant is a regular employee of the owner. Not only would the statutory notice serve no purpose, but additionally it would be wholly inconsistent with the normal relationship between an employer and employee; and any requirement that the employee hand written notices of this sort to his employer could very well be a hindrance to good labor management relations.

Considering the problem at which Section 429.012 was directed and the unfortunate consequences which would result from bringing employees under the provisions of that section, it cannot be believed that the Legislature intended that an employee of the owner be included within the concept of "original contractor" for the special purposes of that section. That conclusion is especially compelled when it is remembered that subsection 3 of Section 429.012 makes failure to give the written notice a misdemeanor. A statute which is penal in nature is of course to be strictly construed. *State ex rel. Wright v. Carter,* 319 S.W.2d 596 (Mo. banc 1959).

The standard rule of construction calls for a statute to be given a reasonable interpretation in light of the legislative objective. *Laclede Gas Co. v. City of St. Louis,* 363 Mo. 842, 253 S.W.2d 832 (1953);

*State ex rel. Zoological Park Subd., St. Louis v. Jordan,* 521 S.W.2d 369 (Mo.1975); *State ex rel. Dravo Corporation v. Spradling,* 515 S.W.2d 512 (Mo.1974); *Maryland Casualty Co. v. General Electric Co.,* 418 S.W.2d 115 (Mo. banc 1967); *State ex rel. Stern Bros. & Co. v. Stilley,* 337 S.W.2d 934 (Mo.1960). Moreover, the true intention of the framers must be followed and where necessary the strict letter of the act must yield to the manifest intent of the Legislature. *State ex rel. Webster Groves Sanitary Sewer Dist. v. Smith,* 342 Mo. 365, 115 S.W.2d 816 (1938); *City of Joplin v. Joplin Water Works Company,* 386 S.W.2d 369 (Mo.1965); *State ex rel. Kirks v. Allen,* 255 S.W.2d 144 (Mo.App.1953); *Taylor v. McNeal,* 523 S.W.2d 148 (Mo. App.1975); *Carson v. Oxenhandler,* 334 S.W.2d 394 (Mo.App.1960); *State ex rel. Blackwell v. Travers,* 600 S.W.2d 110 (Mo. App.1980). Also to be considered, the mechanic lien statute is remedial in nature and must be liberally construed in favor of the lien claimant. *R.L. Sweet Lumber Co. v. E.L. Lane, Inc.,* 513 S.W.2d 365 (Mo. banc 1974); *J.R. Meade Co. v. Forward Construction Co.,* 526 S.W.2d 21 (Mo.App. 1975); *Cork Plumbing Co. v. Martin Bloom Associates,* 573 S.W.2d 947 (Mo. App.1978).

Even First Federal itself admits in its brief before this court that a construction of 429.012 which would include Denton would not be a proper one. In this respect the First Federal brief states: "If this Court holds that employees in situations similar to that of Appellant are 'original contractors' under the Mechanic's Lien laws, then Section 429.012 would apply to all of them with absurd results. No employee would furnish the notice prescribed by Section 429.012 to his employer prior to commencing work on a project, and such a mandate would undoubtedly work harsh results on numerous persons."

We conclude that Section 429.012 was not intended to and does not require an employee of the property owner, such as Denton in the present case, to give the

special notice specified by that statutory section.

## II.

### *Application of Section 429.100*

■ Section 429.100 by its terms applies to "[e]very person except the original contractor." First Federal argues with considerable logic that if Denton is not an "original contractor" for the purpose of Sec. 429.012, then he cannot be an "original contractor" for the purpose of Sec. 429.100. To accept that argument, however, would require ignoring an unbroken line of cases declaring the purpose of Sec. 429.100 and interpreting that section in light of its purpose.

The Missouri decisions hold that the purpose of Sec. 429.100 is to afford a property owner notice of outstanding claims of subcontractors so that he may withhold payment from his direct contractor and thus avoid double payment. In light of that purpose, the 10-day notice need not be given by one with whom the owner has a direct contract. This reasoning is well stated in *Waters v. Gallemore*, 41 S.W.2d 870 (Mo.App.1931), where a property owner acted as his own general contractor and hired directly a mason, a carpenter, a plasterer, a painter and a plumber. The owner failed to pay these workmen, and they asserted mechanic's liens. The owner defended on the ground that none of the plaintiffs had given the statutory 10-day notice. This court held that the 10-day notice was not required:

"However, we are convinced that under the facts and circumstances of this case there is no merit in any of them. Plaintiffs were not journeymen, but were original contractors to do specified work and were not employed under any other contractor. They made their contracts with the owner or proprietor. They were not required to give ten days' notice of their intention to file liens or file same within sixty days after the indebtedness accrued. Sections 3156, 3161, Rev.St. 1929.; *Darlington Lumber Co. v. Building Co.*, 134 Mo.App. 316, 114 S.W. 77;

*Ambrose Mfg. Co. v. Cora U. Gapen et al.*, 22 Mo.App. 397; *Hearne et al. v. Chillicothe & Brunswick Rd. Co.*, 53 Mo. 324. There was no call for a notice of a lienable demand on the part of these plaintiffs in order to warn the owner against paying a contractor. The owner made the contracts himself with the plaintiffs and knew of his obligation to them. *Bruner Granitoid Co. v. Klein*, 100 Mo.App. 289, 73 S.W. 313."

To the same effect: *R.L. Sweet Lumber Co. v. E.L. Lane, Inc., supra; J.R. Meade Co. v. Forward Construction Co., supra; E.C. Robinson Lumber Co. v. Baugher*, 258 S.W.2d 259 (Mo.App.1953); *Reese v. Cibulka*, 68 S.W.2d 902 (Mo.App.1934).

Denton in the present case was in direct privity with Charlebois, and Charlebois well knew that it had not paid the $6,400 in bonus payments due to Denton. A 10-day notice by Denton to Charlebois would have served no possible purpose and under the authority cited was not required.

■ First Federal calls attention to the fact that Denton in his cross claim alleged that he had given at least 10 days notice prior to the filing of his mechanic's lien in compliance with Section 429.100. In his affidavit supporting his mechanic's lien, Denton also stated that he had given at least 10 days notice prior to the filing of the lien. First Federal argues that these statements constitute an admission by Denton that Section 429.100 does apply to him, and the fact that he gave only four days notice instead of 10 days notice is a fatal defect.

In making that argument, First Federal overlooks that Denton also alleged that he had made demand within six months, which would be a time period applicable only in the case of an original contractor. Obviously Denton was trying to allege compliance with both notice provisions. He was, in fact, not subject to the notice requirement of Section 429.100, and his erroneous allegations with respect to having given the 10 day notice was pure surplusage which can be ignored.

We recognize something of a verbal inconsistency in holding that the term "original contractor" has a different signification under Sec. 429.012 than it has under Sec. 429.100. Nevertheless, strict adherence to words must yield to the overriding principle of giving effect to the legislative purpose and intent. As stated by Judge Lamm in *Rutter v. Carothers*, 223 Mo. 631, 122 S.W. 1056 (1909) and repeated in *State ex rel. Blackwell v. Travers, supra:* "the naked letter of the law must gently and a little give way to its obvious intendment."

We hold that Denton was not within the purpose of and was not required to comply with the 10-day notice rule of Sec. 429.100.

### III.

*Failure to Pray Relief Against First Federal and Its Transferees*

■ First Federal argues that Denton's failure to plead any claim against it or its vendees deprived the court of jurisdiction to enter any judgment against it or its vendees. It further argues that because of Denton's failure to plead any claim against it, it did not have opportunity to plead affirmative defenses which it has against Denton.

These questions were never ruled by the trial court, and consequently there is nothing before this court for review. On remand, the trial court may consider the desirability and permissibility of amended pleadings to cure the procedural problems.

The judgment insofar as it denied a mechanic's lien to Denton is reversed and the cause is remanded for further proceedings.

BILLINGS, Judge, dissenting.

I dissent from the principal opinion and that of the Court of Appeals because both clearly recognize there was no compliance with the notice provision of the mechanic's lien statutes but, nevertheless, weave an exception which permits a lien by appellant Denton. The trial court found and determined, correctly in my view, that because of the lack of statutory notice appellant Denton failed to perfect a mechanic's lien.

I would affirm the judgment of the trial court denying the lien.