Ed BULLMASTER d/b/a Bullmaster
Excavating & Demolition,
Respondent,

v.

Michael G. KRUEGER and Robin
D. Krueger, Appellants,

Environmental Response &
Technologies, Inc.,
Defendant,

Fides Capital, L.L.C., Appellant.

No. WD 62780.

Missouri Court of Appeals,
Western District.

Dec. 21, 2004.

Arthur D. Peppard, Memphis, MO, for appellants Kruegers.

Charles G. Larson, St. Joseph, MO, for appellant Fide Capital, L.L.C.

Jere L. Loyd, St. Joseph, MO, for respondent.

Before BRECKENRIDGE, P.J., HOWARD and SMART, JJ.

PATRICIA BRECKENRIDGE, Judge.

Ed Bullmaster, d/b/a Bullmaster Excavating & Demolition, sued Michael Krueger and Robin Krueger to enforce a mechanic's lien on property now owned by the Kruegers. Before the Krueger's purchased the property, Constance Miller owned and operated a service station on the property. After the station was closed, Ms. Miller contracted with Environmental Response & Technologies, Inc., for the removal of the underground storage tanks located on the property. Environmental subcontracted the excavation and removal of the tanks to Mr. Bullmaster. The mechanic's lien Mr. Bullmaster sought to enforce arose from excavation work Mr. Bullmaster performed on the property as a subcontractor.

The Kruegers filed a counterclaim in interpleader requesting that they be allowed to deposit $55,269 in funds they received from the state for payment on a claim presented to the Missouri Petroleum Storage Tank Insurance Fund (PSTIF) for removal of the underground tanks.[1] In their counterclaim for interpleader, the

---

1. In an effort to limit the environmental and public health hazards surrounding leaking underground storage tanks, the Environmental Protection Agency and the State of Missouri established rules and regulations holding owners and operators of such tanks financially responsible for leaks. *See* section 319.100 et seq. To provide funds to assist with cleanup of contamination caused by leaking tanks, the state created the Underground Storage Tank Insurance Fund. *See* section 319.129. Owners and operators

Kruegers named Mr. Bullmaster, Environmental, and Fides Capital, LLC, as defendants. Fides' claim arose from a security interest in and an assignment of the accounts receivable of Environmental.

Following a bench trial, the trial court entered a default judgment for $81,328, plus interest, in favor of Mr. Bullmaster and against Environmental. The trial court also entered judgment against the Kruegers and in favor of Mr. Bullmaster on Mr. Bullmaster's petition to enforce his mechanic's lien, specifically entering a special lien against the Kruegers' property. The trial court also entered judgment in favor of Mr. Bullmaster on the Krueger's interpleader action and ordered the circuit clerk to disperse the $55,269 PSTIF funds to Mr. Bullmaster.

In their joint brief on appeal, the Kruegers and Fides assert that the trial court erred in failing to dismiss Mr. Bullmaster's petition to enforce mechanic's lien because Mr. Bullmaster failed to give notice to the property owner, as required by section 429.100, RSMo 2000,[2] and in entering judgment awarding the interpled funds to Mr. Bullmaster.[3] The Kruegers and Fides further contend that the trial court erred in denying the Kruegers' motion to dismiss because the mechanic's lien Mr. Bullmaster seeks to enforce did not contain a just and true account of the work performed by Mr. Bullmaster. Because Mr. Bullmaster failed to give notice to Ms. Miller, who owned the property on the date the work commenced, as required by section 429.100, the trial court lacked jurisdiction to impose a special lien in favor of Mr. Bullmaster and against the Kruegers' property. Therefore, the case is remanded with directions to sustain the Kruegers' motion to dismiss. Furthermore, because neither Mr. Bullmaster nor Fides has established a valid claim to the funds deposited by the Kruegers with the circuit court, the case is remanded for retrial to determine the proper disposition of the disputed funds.

### Factual and Procedural Background

In 1999, Constance Miller was the owner of DX Service Station in Gower, which contained underground petroleum storage tanks. After the station was closed, it became necessary to remove the underground storage tanks. Ms. Miller contracted with Environmental to remove and dispose of the underground storage tanks, to test the soil and remove and dispose of any contaminated soil, and to provide clean backfill as needed. Environmental, owned by Martin Altman, was the general contractor on the project. Part of the cost of the project was to be paid by the state through the PSTIF. Environmental subcontracted with Mr. Bullmaster to perform excavation of the site, removal of the tanks, hauling the contaminated soil, and providing clean backfill. Mr. Bullmaster performed these tasks in November 1999 and March 2000.

In July 2000, Ms. Miller conveyed the property to the Kruegers. Mr. Bullmaster demanded payment from Environmental and the Kruegers for $81,328, the alleged balance owed under his contract with Environmental for the work he performed in excavating the underground storage tanks. After failing to receive payment, on September 4, 2000, Mr. Bullmaster served the

---

of petroleum storage tanks are eligible for participation in the fund to partially meet the financial responsibility of cleanup. The name of the special trust fund was subsequently changed to the Petroleum Storage Tank Insurance Fund. Section 319.129.1.

2. All statutory references are to the Revised Statutes of Missouri 2000.

3. Environmental is not a party to the appeal.

Kruegers with notice of his intent to file a mechanic's lien. Mr. Bullmaster did not serve notice on Ms. Miller. On September 20, 2000, Mr. Bullmaster filed a mechanic's lien affidavit, which included an account of the amount due, and claimed a lien upon the real estate owned by the Kruegers. Thereafter, Mr. Bullmaster filed a petition to enforce the mechanic's lien naming the Kruegers and Environmental as defendants.

On July 3, 2001, the trial court entered an interlocutory default judgment against Environmental for $81,328. On August 13, 2002, the Kruegers filed a counterclaim in interpleader naming Environmental and Mr. Bullmaster as defendants and Fides as a third-party defendant. The Kruegers sought to interpled $55,269 they received from the PSTIF. The Kruegers alleged that Fides claimed an interest in the funds through a judgment it held against Mr. Altman and Environmental. Fides answered claiming a perfected security interest in and an assignment of the accounts receivable of Environmental, represented by the interpled funds. The trial court subsequently entered an order authorizing the Kruegers to deposit the funds into the circuit clerk's office.

The trial court held a bench trial on January 17, 2003. At the beginning of trial, the Kruegers moved for judgment on the pleadings based on Mr. Bullmaster's failure to provide notice to Ms. Miller, the owner of the property at the time Mr. Bullmaster commenced work on the property, as required by section 429.100. The trial court denied the Krueger's motion. At the conclusion of Mr. Bullmaster's case, the Kruegers again moved to dismiss Mr. Bullmaster's petition on the grounds that (1) Mr. Bullmaster failed to provide notice to Ms. Miller, (2) Mr. Bullmaster's lien failed to contain a just and true account of the work allegedly performed, and (3) Mr.

Bullmaster failed to include all contracting parties, i.e., Ms. Miller, in the action. The trial court again denied the Kruegers' motion.

On March 20, 2003, the trial court entered its final judgment. Specifically, the trial court entered judgment in favor of Mr. Bullmaster and against Environmental for $81,328 plus interest, and entered judgment in favor of Mr. Bullmaster for a mechanic's lien against the real estate owned by the Kruegers. In addition, the trial court entered judgment in favor of Mr. Bullmaster on the Kruegers' counterclaim for interpleader, awarded the deposited funds to Mr. Bullmaster, and ordered the circuit clerk to disperse the funds to Mr. Bullmaster in partial satisfaction of the judgment against Environmental and the Kruegers' real estate. Following denial of both the Kruegers' and Fides' motions for new trial, the Kruegers and Fides filed this appeal.

### Standard of Review

When reviewing a court-tried mechanic's lien case, an appellate court "will sustain the judgment of the trial court 'unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.'" *Gauzy Excavating & Grading Co. v. Kersten Homes, Inc.*, 934 S.W.2d 303, 304 (Mo. banc 1996) (quoting *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)).

### Mechanic's Lien Invalid Because of Improper Notice

In their first point, the Kruegers and Fides contend that the trial court erred in failing to dismiss Mr. Bullmaster's petition because the trial court lacked subject matter jurisdiction to impose a me-

chanic's lien.[4] Specifically, the Kruegers and Fides argue that under section 429.100, Mr. Bullmaster was required to serve notice of his intent to file a mechanic's lien with the owner of the property at least ten days prior to filing his mechanic's lien affidavit. The Kruegers and Fides assert that the owner to which Mr. Bullmaster was required to give notice was Ms. Miller, not the Kruegers. This is so, argue the Kruegers and Fides, because Ms. Miller was the owner of the property at the time Mr. Bullmaster performed the work. The Kruegers and Fides contend that Mr. Bullmaster was not required to provide the Kruegers with notice as subsequent purchasers of the property and, therefore, because Mr. Bullmaster conceded that he did not provide notice to Ms. Miller, the trial court erred in failing to dismiss Mr. Bullmaster's petition.

 "Actions to establish and enforce a mechanic's lien are purely statutory in nature and the averments must plead and the evidence must prove the statutory elements before recovery is permitted." *Kenny's Tile & Floor Covering, Inc. v. Curry*, 681 S.W.2d 461, 472 (Mo.App.1984). Proper notice is a condition precedent to the creation, existence or validity of a mechanic's lien. *Id.* Under section 429.100, a subcontractor "shall give ten days' notice before the filing of the lien, as herein required, to the owner, owners or agent, or either of them, that he holds a claim against such building or improvement, setting forth the amount and from whom the same is due." Strict compliance with the notice provisions contained in the mechanic's lien statutes is required. *Gauzy Excavating & Grading*, 934 S.W.2d at 305.

Mr. Bullmaster maintains that he provided proper notice of his intent to file a mechanic's lien by notifying the Kruegers, the current owners of the property. Under section 429.100, however, notice must be given by a subcontractor, "if it is required at all, only to the person who was the owner at the time the work was done or materials furnished." *BCI Corp. v. Charlebois Constr. Co.*, 673 S.W.2d 774, 776 (Mo. banc 1984) (interpreting section 429.100, which sets forth the notice requirement for a subcontractor). Moreover, "[n]otice is not required to persons who subsequently become owners." *Id.* *See also Vasquez v. Village Ctr., Inc.*, 362 S.W.2d 588, 596 (Mo.1962) ("The lien of a mechanic attaches at the time of the commencement of the work. Consequently,

---

4. The Kruegers and Fides incorrectly challenge the trial court's *subject matter* jurisdiction. "[J]urisdiction of a court to adjudicate a controversy rests on three essential elements: (1) jurisdiction of the subject matter; (2) jurisdiction of the res or the parties; [and] (3) ... jurisdiction to render the particular judgment in the particular case." *State ex rel. Lambert v. Flynn*, 348 Mo. 525, 154 S.W.2d 52, 57 (banc 1941). "Subject matter jurisdiction is the court's authority to decide a defined class of cases." *Lake Wauwanoka, Inc. v. Spain*, 622 S.W.2d 309, 314 (Mo.App.1981). The third class of jurisdiction, however, "jurisdiction to render the particular judgment in the particular case (sometimes called 'competency'), partakes of the character of one or the other of the first two." *Flynn*, 154 S.W.2d at 57. The court has no jurisdiction (or competency) to render a particular judgment in a particular case, for example, if statutory conditions have not been complied with, or the petition fails to plead a claim upon which relief can be granted. *Id.; Lake Wauwanoka*, 622 S.W.2d at 314–15. *See also Cullen v. Dir. of Revenue*, 804 S.W.2d 749, 750 (Mo. banc 1991) (finding that trial court lacked jurisdiction because appellant failed to follow statutory deadline in filing petition for review). In this case, because the Kruegers and Fides allege that Mr. Bullmaster failed to satisfy statutory notice requirements, they challenge the trial court's jurisdiction to render a particular judgment in this particular case, or the trial court's competency to enter judgment, not the trial court's subject matter jurisdiction.

the owner referred to in the statute is the owner on the date the work was commenced." (citations omitted)); *Dave Kolb Grading, Inc. v. Lieberman Corp.,* 837 S.W.2d 924, 936 (Mo.App.1992) ("The 'owner' is defined as the person who has legal title to the real estate on the date the work commenced.").

Here, Mr. Bullmaster's petition alleged that he performed work on the property at issue in March 2000. At that time, it is undisputed that Ms. Miller was the owner of the property. The Kruegers did not purchase the property until July 2000. Therefore, before filing his lien, Mr. Bullmaster was required to provide notice to Ms. Miller, which Mr. Bullmaster conceded he did not do. Consequently, the trial court lacked jurisdiction to impose a special lien in favor of Mr. Bullmaster and against the Kruegers' property. It follows that the trial court erred in denying the Kruegers' motion to dismiss Mr. Bullmaster's petition for enforcement of mechanic's lien. Because disposition of the parties' first point resolves the question of the validity of the mechanic's lien, this court need not consider appellants' second point, which alleges that the trial court erred in denying the Kruegers' motion to dismiss because the mechanic's lien Mr. Bullmaster seeks to enforce did not contain a just and true account of the work performed by Mr. Bullmaster.

### Interpleader

In their third point on appeal, the Kruegers and Fides allege that the trial court erred in granting judgment in favor of Mr. Bullmaster on the Kruegers' counterclaim for interpleader. In particular, the Kruegers and Fides contend that the trial court erred in finding that Mr. Bullmaster's mechanic's lien provided Mr. Bullmaster with an interest in the funds the Kruegers deposited with the circuit clerk because such a result exceeds the scope of available relief under Chapter 429, which governs statutory liens. In addition, the Kruegers and Fides argue that Mr. Bullmaster failed to offer any evidence outside the context of the mechanic's lien that would demonstrate an interest in the deposited funds.

Before reaching the merits of the Kruegers and Fides point, however, this court must address the procedural issues surrounding an interpleader action. "[A]n interpleader action involves two successive litigations, one between the parties seeking interpleader and the rival claimants on the issue of the propriety of interpleader, and a second between the rival claimants on their conflicting claims." *Amwest Sur. Ins. Co. v. Stamatiou,* 996 S.W.2d 708, 712 (Mo.App.1999). "In the first phase, the court determines whether the requirements for interpleader have been met." *Id.* In particular, the first phase "is a litigation between the party seeking interpleader and the rival claimants, and involves a determination of whether interpleader is appropriate for the situation." *State ex rel. Phillips v. LePage,* 67 S.W.3d 690, 693 (Mo.App.2002). "If the requirements are met, and if the stakeholder has paid the money alleged to be owing into court and all counterclaims by defendants are disposed of by the court, the court issues a judgment sustaining the bill of interpleader and discharging the stakeholder from further liability." *Amwest,* 996 S.W.2d at 712. Then, in the second phase, the claimants to the money litigate their claims between themselves. *Id.*

In this case, even though the trial court entered an order authorizing the Kruegers to deposit the disputed funds into the circuit clerk's office, which the Kruegers did, the court never ruled on whether interpleader is appropriate for this situation.

Likewise, the trial court never discharged the Kruegers from liability regarding the deposited funds, nor did the court dismiss the Kruegers from the interpleader action. Consequently, the trial court never expressly ruled on the propriety of interpleader in this case. In ordering that the deposited funds be applied in partial satisfaction of the judgment against the Kruegers' real estate, however, the trial court's judgment effectively found that the Kruegers did maintain an interest in the disputed funds. Therefore, the trial court's final judgment in this case can be properly viewed as finding that interpleader was inappropriate in this case. Such a finding is not inconsistent with the trial court's failure to dismiss the Kruegers from the action.

Based on this court's disposition of point one, the question whether a mechanic's lien would provide Mr. Bullmaster with any interest in the funds the Kruegers deposited with the circuit clerk need not be considered. Because Mr. Bullmaster failed to give proper notice to Ms. Miller, Mr. Bullmaster's mechanic's lien is invalid. Therefore, the trial court clearly erred in awarding the deposited funds to Mr. Bullmaster based on Mr. Bullmaster's mechanic's lien. Moreover, Mr. Bullmaster offered no other evidence demonstrating an interest in the deposited funds.

 Fides, however, also has failed to demonstrate any interest in the deposited funds. While Fides did demonstrate that Environmental assigned its interest in the "Miller's DX project" to Fides, that Fides has judgments against Environmental, and that Fides has a secured interest in Environmental's accounts receivable, Fides presented no evidence demonstrating that the Kruegers assumed Ms. Miller's contractual obligations to Environmental. Consequently, Fides failed to prove that any of its interests related to Environmental extends to the funds received by the Kruegers from the insurance fund. Accordingly, the case must be remanded to the trial court for further proceedings to determine the proper disposition of the deposited funds. Moreover, because the Kruegers have disclaimed any interest in the deposited funds, deposited the funds into the court, and all claims against the Kruegers have now been resolved, interpleader is appropriate. *Amwest*, 996 S.W.2d at 712. Therefore, on remand, the trial court is instructed to issue a judgment sustaining the Kruegers' bill of interpleader and discharging the Kruegers from further liability. *Id.*

## Conclusion

Because Mr. Bullmaster failed to provide notice of his intent to file a mechanic's lien to Ms. Miller, the owner of the property at the time Mr. Bullmaster commenced work on the subject property, the trial court lacked jurisdiction to impose a special lien against the Kruegers' property. Therefore, the portion of the judgment imposing a special lien against the Kruegers' property is reversed and the case is remanded to the trial court with directions to sustain the Kruegers' motion to dismiss. In addition, the trial court's judgment in favor of Mr. Bullmaster on the Kruegers' counterclaim for interpleder is reversed and the cause is remanded for further proceedings consistent with this opinion. The judgment is affirmed in all other respects.

All concur.